Katherine M. MEYER,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 79–1247.

United States Court of Appeals,
Tenth Circuit.

Argued June 3, 1980.

Decided June 26, 1980.

Rehearing Denied July 21, 1980.

James R. Collins of Kintzele & Collins, Denver, Colo., for plaintiff-appellant.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with him on the brief), for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a Federal Tort Claims Act case which arises under 28 U.S.C §§ 1346(b), 2671–2679. The basis for jurisdiction under the mentioned Act stems from the fact that the dentist who performed an operation which resulted in injury to the plaintiff was employed by the United States in the Family Clinic at Lowry Air Force Base in Denver. The particular act relied on is the alleged failure of the dentist, Dr. Kent L. Aitken, to advise the plaintiff-appellant that a risk existed that she would have a permanent numbness resulting from the severance of the lingual nerve in connection with the removal of her third molars (wisdom teeth).

The dispute centers on whether Dr. Aitken advised the plaintiff of the hazard incident to removal of these particular teeth. The district judge ruled that the severance of the nerve in the removal of the teeth in question was not the result of substandard treatment.

The important controversy in the case is one of fact, namely, whether Dr. Aitken warned the plaintiff that the removal of the third molars carried with it a risk of nerve severance capable of producing numbness which follows the severing of the nerve.

The plaintiff testified that no such warning was given. Dr. Aitken was unable to say whether it was or was not given. He testified, however, that it was his practice to give such a caution or admonition prior to undertaking the extraction of third molars. He said that he had previously performed extractions of third molars in the military service and on a weekly basis at the Family Dental Clinic. His testimony was thus based on habit, custom and routine over a period of time inasmuch as he had no recollection of what had taken place when the teeth were removed. Dr. Aitken did remember reviewing the x-rays of the teeth prior to the extraction, according to his testimony, and he determined that they were sufficient for the surgical procedure. He administered three injections of novocaine to deaden the pain. The top molar was removed without incident. The lower third molar presented more difficulty because of its mesial angular impaction. He cut a small flap in the lower right gum proximate to the lower molar, observed the impacted molar, removed the bone over the tooth by use of dental instruments, and then sectioned and surgically removed the molar. The flap was sutured and the area was cleansed. Additional novocaine was injected during the operation. The reason that the nerve was severed was because, according to the doctor, it may have been located along the gum line or elsewhere in the jaw; that it is frequently hidden; and that its exact location is not discernible. He stated his opinion that x-rays of the molars and locations of roots are of no assistance in knowing where the lingual nerve is situated. The trial judge found that a preponderance of the evidence supported this viewpoint.

As indicated above, the plaintiff was positive in her statement that no advice and warnings as to potential risks attending the surgical procedure were given. She said that had she been told about the risk, she might have refused to go through with the operation.

Dr. Aitken's testimony was less than positive. He said that his habit and custom since dental school and during his three-year military service, extending to his asso-

ciation at the Family Dental Clinic, was to give standard advice to patients about extraction of third molars. He advised patients as to the need for the extraction of these teeth and at the same time he advised patients that a potential existed for nerve damage from extraction of the molars, including loss of sensation or taste, and also advised as to general details of the extraction procedure. Generally, he gave advice to the patient when he first diagnosed the need for the extraction, although he said it could possibly come at any time during the surgical procedure. He said that plaintiff voluntarily consented to the extraction and to the medical procedure.

The district court found that it was Dr. Aitken's habit, custom and routine to advise patients of potential risks of molar extractions and that he acted in conformity with that long established habit and custom when dealing with the plaintiff. The court further found that Aitken "advised plaintiff in a general way of the common and potential risks of extraction of the lower third molar, as shown by his habit, custom and routine, and corroborated by dental assistants Mugele and Smith. He thus complied with a dentist's or physician's duty under Colorado law to inform a patient in a general way as to procedures to be followed in the operation and potential risks."

The trial court relied on Rule 406 of the Federal Rules of Evidence, which Rule provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

The trial court also relied on *Hazelwood School District v. United States*, 433 U.S. 299, 309–10 n.15, 97 S.Ct. 2736, 2742–2743 (1977), and the decision of the Sixth Circuit in *United States v. Callahan*, 551 F.2d 733 (6th Cir. 1977) (pertained to relevancy of the routine practice of a construction company in proving the conduct of the company

on a particular occasion). Also cited was *Ryan v. Aspen Highlands Skiing Corporation*, No. 75–1533 (10th Cir. Aug. 17, 1976), wherein it was held that the trial court had properly admitted evidence as to the defendant's customs and habits in operating the ski chairlift in a personal injury action. The court in that case cited *Frase v. Henry*, 444 F.2d 1228, 1232 (10th Cir. 1971).

The Colorado Supreme Court was quoted in an early case, *Denver Tramway Co. v. Owens*, 20 Colo. 107, 36 P. 848, 854 (1894), as follows:

> If it had been proposed to show that the gripman had been in the service of the company for considerable time, and that it had been his particular habit or custom not to stop in the middle of the block, this would have lent corroboration to his testimony that he did not so stop; for, in case of doubt as to what a person has done, it may be considered more probable that he has done what he has been in the habit of doing than that he has acted otherwise.

*See also* McCormick on Evidence § 195 (2d ed. 1972); Lewan, *Rationale of Habit Evidence*, 16 Syracuse L.Rev. 39 (1962); 59 A.L.R.3d 1327; 28 A.L.R.3d 1293; 29 Am. Jur.2d, Evidence §§ 303, 316, 317.

The trial court found, in addition, that there was substantial evidence establishing that Dr. Aitken routinely and regularly informed dental patients of the potential risks involved in the extraction of third molars. His testimony to this fact was supported by two dental assistants.

Apart from the issue discussed above, there is little else in dispute in the case. It cannot be seriously contended from the testimony offered that lingual nerve damage is not uncommon. Apparently this can flow from a variety of causes.

The trial judge further found that the extraction of the molars was performed properly and in a medically accepted manner within the standard of care in the community. The trial court finally found that plaintiff had failed to establish that Dr. Aitken or other agents of the United States acted negligently, that Dr. Aitken had exercised reasonable and ordinary care and dili-

gence in the discharge of his responsibility to perform extractions, and that he was not negligent in any other respects, particularly in not being able to locate the nerve in question.

The plaintiff does not take the position that the habit evidence was inadmissible. Nevertheless, she claims that it is not to be preferred over the positive evidence of the plaintiff that she was not warned inasmuch as the court did not find that her testimony was lacking in truthfulness.

We disagree with the argument as to the weight to be given to testimony of habit. Our conclusion is that it does not stand in a special light nor is it to be referred to a second-class category which automatically carries little weight. If it is admissible, the weight to be given to it is dependent on the particular circumstances. The plaintiff would have us reject the evaluations which were given. To do so is not justified. It would require us to substitute our judgment for that of the trial court. This we cannot do.

We conclude that the judgment of the trial court should be and the same is hereby affirmed.

## ON PETITION FOR REHEARING

The plaintiff-appellant has objected to the court's decision affirming the trial court's finding on the sole factual issue in the case, namely, that which had to do with the utilization of evidence of habit and routine in giving a warning.

First of all, the custom, habit and routine was clearly established not only by the dentist involved but also by other persons who had knowledge of this. However, plaintiff's position is that such evidence is incompetent to cast doubt on plaintiff's direct positive statement that no such warning was given. If the contention is that direct testimony is invariably superior to this variety of circumstantial proof, it is wrong.

Most of the difficulty stems from the fact that counsel for the plaintiff-appellant misstates the position of this court when it contends:

> Evidence of the Habit . . . of the Routine, practice, . . . whether cor-

roborated or not and regardless of the presence of eye-witnesses, is *conclusively presumed* to prove the conduct of the witness . . . on a particular occasion was in conformity with the habit or routine practice.
> (Emphasis plaintiff's).

This court held that evidence of habit or routine was to be weighed and considered by the trier of the facts in the same manner as any other type of direct or circumstantial evidence. The court did not accept the plaintiff-appellant's view that such evidence, standing alone, is to be disregarded as a matter of law when contradicted by the plaintiff's eyewitness testimony. Such is not the law. The weight to be given to any testimony depends upon the particular circumstances.

In the present case there was substantial corroboration of Dr. Aitken's habit of giving a necessary warning. This was competent evidence to support an inference that a warning was given to the plaintiff in the incident which was being tried. Judge Finesilver was entitled to weigh that evidence in the same manner that any other evidence would be weighed and balance it against the testimony of the plaintiff that no such warning was given. Conflicting evidence raises an issue of fact that was resolved by the trier of the fact in a manner which was not clearly erroneous. *See* Rule 52(a), F.R. Civ.P.

Counsel for plaintiff-appellant's main concern is with the creation of a presumption, conclusive or otherwise, that evidence of a habit or routine establishes conformance with the habit or routine on a particular occasion. Not so. Such evidence, when substantial, supports an inference by the trier of the facts that the habit was conformed with on a particular occasion. This is true regardless of whether the individual relying on habit had a recollection of conforming with it on a particular occasion, even though the plaintiff in the case directly contradicts such conformity with the habit.

The court's opinion does not, contrary to the argument of plaintiff-appellant, over-

rule any existing law. *Nicholas v. Davis*, 204 F.2d 200, 202 (10th Cir. 1953), held that "when controlling, positive, and uncontradicted evidence is introduced, and when it is unimpeached by cross-examination or otherwise, [and it] is not inherently improper, and no circumstance reflected on the record casts doubt on its verity, . . . it may not be disregarded, even though adduced from interested witnesses."

*Nicholas* was an action for refund of income taxes. The court noted that the collector "offered no evidence and neither cross-examination nor other circumstances, reflected in the record, in anywise impeached or contradicted the evidence adduced in behalf of [the claimant]." *Id.* at 202. That case is clearly distinguishable from the case at bar. Here the defendant *has* presented evidence, although indirect, which cast doubt on the plaintiff's testimony. It created an issue of fact. The evidence on behalf of the defendant here established a habit and routine of giving appropriate warnings and was sufficient to put in issue the credibility of the plaintiff's statement that a warning was given.

The opinion of the court in this case is not at odds with *Levin v. United States*, 338 F.2d 265 (D.C.Cir.1965). In that case the court found that there was no reversible error growing out of refusal to allow testimony of a rabbi as to the defendant's habit of observing the Orthodox Jewish Sabbath. This was a larceny prosecution in which portions of the crime occurred during part of the Sabbath period. The defense was alibi. The court said that a party's religious practices were not the kinds of activities which provide a basis for concluding "invariable regularity" necessary to constitute admissible habit evidence. Thus, it was the inherent weakness of the particular testimony that caused the evidence to be rejected. In addition, the excluded evidence was cumulative of other testimony of the defendant's practice of spending the Sabbath at home with his family.

It can be said from *Levin* that habit evidence carries less weight where used to disprove a volitional act than to disprove a charge that a defendant inadvertently failed to give a required warning.

Plaintiff offers the decision of the Colorado Court of Appeals in *Oglesby v. Conger*, 31 Colo.App. 504, 507 P.2d 883 (1972). The offer in that case was to establish the position that evidence of habit or custom was inadmissible by a party to show that he is not negligent on a particular occasion. *Oglesby* was not decided under the Federal Rules of Evidence and thus it is not controlling. It is also factually distinguishable from the case of a negligence action for the recovery of damages which allegedly flowed from a two-car collision. The defendant at the trial estimated his speed based not on the events, but on his statement of habit that his speed would not be over 25 miles per hour because that is the way that he said he always drove downtown. The case had to be tried because of another and different legal point.

Without question, the habit testimony in this case is much more specific and substantial than that presented in *Oglesby*.

Plaintiff's concerns and assertions are unfounded, and we adhere to our prior judgment in the case. This court is not at liberty to disregard an issue of fact at trial and to substitute our judgment for that of the trial court.

The petition for rehearing is denied.