John F. LOUGHAN, Plaintiff-Appellant,

v.

FIRESTONE TIRE & RUBBER COM-
PANY, Defendant-Appellee.

John F. LOUGHAN,
Plaintiff-Appellant, Cross-Appellee,

v.

FIRESTONE TIRE AND RUBBER
COMPANY, Defendant-Appellee,
Cross-Appellant.

Nos. 83–5189, 83–5520.

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1985.

Richard C. Alkire, Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., Marshall I. Nurenberg, Harlan M. Gordon, Joel Levin, Cleveland, Ohio, Ronald Payne, Fort Lauderdale, Fla., for Loughan.

G. William Bissett, Preddy, Kutner & Hardy, Miami, Fla., Paul Michael Pohl, Cleveland, Ohio, for Firestone Tire & Rubber Co.

Before KRAVITCH and HATCHETT, Circuit Judges, and HANCOCK[*], District Judge.

HATCHETT, Circuit Judge:

In these consolidated appeals, we review the admissibility of habit evidence pursuant to Rule 406, Federal Rules of Evidence, and other claims of error arising out of this personal injury diversity case. We affirm.

### Facts

On July 24, 1974, John F. Loughan, the appellant, while employed as a tire mechanic by Slutz-Seiberling Tire Company in Fort Lauderdale, Florida, was mounting and dismounting a Firestone multi-piece rim wheel assembly to a trailer axle. Loughan sustained injuries when, in the process of remounting, a part of the three part rim wheel assembly separated with explosive force, striking Loughan in the head.

Firestone manufactured two product lines of multi-piece rim wheel assemblies. One line, the 20 × 7.33 VR system, included three parts: a 7.33 VR rim base, a 7.33 VR side ring, and a 7.33 VR lock ring. The other line, a 20 × 7.5 R5° system, included three parts: a 7.5 R5° rim base, a 7.5 R5° lock ring, and a 7.5 R5° side ring. While the component parts of these two product lines were not initially intended to be interchanged, after years of production and usage, situations arose whereby the 7.33 VR side and lock rings would be placed together with 7.5 R5° rim bases. In the trade, this was known as a "mismatch," which is involved in the present action.

Loughan asserts that the parts were serviceable and properly reassembled when he mounted the tire on the axle. He claims that the separation resulted from the inherent instability of the product, which constituted a design defect. Firestone contends that the separation was due to a lack of serviceability of the parts or Loughan's improper reassembly.

Loughan brought this diversity personal injury action against Firestone Tire and Rubber Company (Firestone), appellee, asserting theories of negligence and strict liability in tort for the defective design of the multi-piece truck wheel components. After granting Firestone's motion for a directed verdict on the issue of warning, the district court submitted the remainder of the case to the jury, which returned a special verdict in favor of Firestone. Loughan asserts that the district court committed reversible error in admitting into evidence prior instances of Loughan's drinking of alcoholic beverages. The district court held that the evidence of Loughan's drinking was sufficiently regular to constitute habit evidence admissible pursuant to Federal Rule of Evidence 406. At the close of the trial, the district court presented the jury with special verdict interrogatories. The first question was:

> Do you unanimously find by a preponderance of the evidence that if a 20 × 7.33 VR lock and side ring combination in serviceable condition is properly mounted

[*] Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

on the 20 × 7.5 R5° rim base which is the subject of this lawsuit that the result is a potentially unstable and dangerous assembly which may forceably separate? The jury answered this special verdict in the negative; consequently, it made no other determinations. Loughan asserts that his credibility was crucial to the outcome of this case, and that he was prejudiced by the evidence pertaining to his drinking.

### Issues

On this appeal, we consider: (1) whether the district court erred in admitting evidence of Loughan's drinking and previous safety rule violations; (2) whether the district court erred in granting Firestone's motion for directed verdict on the issue of duty to warn; (3) whether the district court abused its discretion in failing to permit Loughan to amend his complaint; and (4) whether the district court erred in its assessment of costs.

### Discussion

■ An analysis of the admissibility of evidence begins with an examination of the purposes for which the evidence is proffered. The record in this case demonstrates Firestone's intent to establish that Loughan's faculties were impaired due to his consumption of alcoholic beverages at the time of the accident. Such evidence was deemed relevant to support Firestone's defense of assumption of risks and the apportionment of liability under Florida's comparative negligence standard. *See Hoffman v. Jones*, 280 So.2d 431 (Fla. 1973). Loughan's capacities, both physical and mental, were critical to development of Firestone's arguments.

Our determination of whether the references to Loughan's drinking introduced by the defendant represents evidence admissible to prove habit begins with a review of the Fifth Circuit's decision in *Reyes v. Missouri Railroad Co.*, 589 F.2d 791 (5th Cir. 1979). In *Reyes*, a Missouri Pacific railroad train ran over Joel Reyes as he lay on the railroad tracks. Reyes sued the railroad alleging negligence on the part of the railroad's employees in failing to discover him as he lay on the tracks. The district court permitted the railroad to support its

defense of contributory negligence by introducing into evidence Reyes' four prior misdemeanor convictions for public intoxication.

The Fifth Circuit reversed the district court and held that the four prior convictions for intoxication were inadmissible under Federal Rule of Evidence 404. The evidence was inadmissible because it was proffered to prove that Reyes acted in conformity with his character on the night of the accident; the court held that the four convictions failed to constitute habit evidence. *Reyes*, 589 F.2d at 792–94. The court stated: "Although a precise formula cannot be proposed for determining when the behavior may become so consistent as to rise to the level of habit, 'adequacy of sampling and uniformity of response' are controlling considerations." *Reyes*, 589 F.2d at 795 (quoting Notes of Advisory Committee on Proposed Rules, Fed.R.Evid. 406, 28 U.S.C.A. at p. 153). *See also United States v. Holman*, 680 F.2d 1340, 1351 (11th Cir.1982).

Loughan asserts that evidence pertaining to his drinking is comparable to the inadmissible evidence in *Reyes* relating to prior misdemeanor convictions for public intoxication. In *Reyes*, the court found that four prior convictions for public intoxication spanning a three and one-half year period are of insufficient regularity to rise to the level of "habit" evidence. *Reyes* at 795. Loughan argues that likewise, testimony from Thompson, Loughan's former employer between 1969 and 1971, was too remote in time and insufficient to establish Loughan's regular routine at the time of the accident in 1974. In Thompson's deposition which was read into evidence, he stated that he fired Loughan because of his drinking. He enumerated the indications that Loughan drank, including Loughan's slurred speech, wobbly walk, alcoholic breath, and complaints from customers. Thompson also testified that Loughan's reputation in the community was a "happy, easy-to-get-along-with guy, but he drank too much." Loughan points out that Thompson's position waivered in his assertions of certainty pertaining to the frequen-

cy of Loughan's consumption of alcoholic beverages.

Firestone relied on three separate sources to establish Loughan's habit of drinking between 1968 and July 24, 1974, the date of the accident. Testimony from Thompson, Loughan's previous employer, Orr, Loughan's supervisor, and Loughan himself supports the district court's admission into evidence proof establishing Loughan's drinking habit pursuant to Federal Rule of Evidence 406.

Prior to admitting testimony of Loughan's drinking, the district court discussed with counsel admission of the evidence in light of the *Reyes* decision and rule 406. The court distinguished the inadmissible evidence in *Reyes* from the evidence introduced by Firestone. The court stated that in *Reyes* the evidence consisted of four particular incidents; whereas, Firestone offered evidence of Loughan's drinking over an extended period of time, coupled with evidence of Loughan's regular practice of carrying a cooler of beer at or about the time of the accident. The district court relied on the cumulative effect of the evidence in measuring its sufficiency to establish a drinking habit under rule 406.

Evidence adduced from three sources, taken together, demonstrates a uniform pattern of behavior. Loughan admitted that he carried a cooler of beer on his truck while employed by Slutz and that he would drink beer at some time between the hours of 9 a.m. and 5 p.m. Orr, Loughan's supervisor at Slutz, testified that Loughan routinely carried a cooler of beer on his truck and that he was in the habit of drinking on the job. Orr stated that complaints had been made by customers regarding Loughan's drinking while working on their equipment and that Loughan "normally" had something to drink in the early morning hours. Thompson, Loughan's former employer, further corroborated Loughan's habit when he testified that he fired Loughan because, based on his general observations and complaints from customers, he believed Loughan drank beer on the job. Thompson's observations of Loughan while under his employ between 1969 and 1971 are consistent with Orr's testimony regarding Loughan's behavior in Florida between 1971 and 1974. These recounts establish a pattern of drinking over a period of time.

▪ Loughan argues that because no direct evidence was presented that he had anything to drink at the time of the accident, it was improper to admit evidence to establish his "habit" of drinking on the job. We reject this reasoning because proof of habit is through indirect evidence offered to prove that the conduct of a person conformed with his routine practice.

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eye witnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed.R.Evid. 406. Loughan asserts that he did not have anything to drink the day of the injury. Also, Orr, who saw Loughan a couple of hours before the accident, testified that although Loughan may have had a drink in the early morning hours, he had not been drinking after reporting to work. Furthermore, Orr stated that Loughan did not have a cooler in his truck on the day in question.

▪ Evidence of habit or routine is to be weighed and considered by the trier of fact in the same manner as any other type of direct or circumstantial evidence. *Meyer v. United States*, 638 F.2d 155, 158 (10 Cir.1980). In this case, as the district court noted, conflicting testimony goes to the weight of the evidence and not to its admissibility. The weight to be given to any testimony depends upon the particular circumstances. *Meyer*, 638 F.2d at 158. Loughan is concerned that the evidence of a habit or routine does not establish conformance with the habit or routine on a particular occasion. To the contrary, such evidence, when substantial, allows the trier of facts to infer that the habit was conformed with on a particular occasion. *Meyer*, 638 F.2d at 158.

Loughan asserts that references to his drinking were inadmissible character evidence. The difficulty in distinguishing inadmissible character evidence from admissible habit evidence is great. Often, the line between the two is unclear:

> Character and habit are close akin. Character is a generalized description of one's disposition, or one's disposition in respect to a general trait,. such as honesty, temperance, or peacefulness. "Habit," in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, in family life, in handling automobiles, and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or giving the hand signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.

*McCormick on Evidence*, § 195 at 462–63. "Although a precise formula cannot be proposed for determining when the behavior may become so consistent as to rise to the level of habit, 'adequacy of sampling and uniformity of response' are controlling considerations." *Reyes*, 589 F.2d at 795 (quoting Notes of Advisory Committee on Proposed Rules, Fed.R.Evid. 406, 28 U.S.C.A. at p. 153). Generally, habit evidence is highly persuasive as proof of conduct on a particular occasion, and its admission depends on the "degree of regularity of the practice and its coincidence with the occasion." *McCormick on Evidence*, § 195 n. 16. Habit evidence is considered to be highly probative and, therefore, superior to character evidence because "the uniformity of one's response to habit is far greater than the consistency with which one's conduct conforms to character or disposition." *McCormick on Evidence*, § 195 at 463.

We stress that "habit or pattern of conduct is never to be lightly estab-lished, and evidence of example, for purpose of establishing such habit, is to be carefully scrutinized before admission." *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 511 (4th Cir.1977). Such an attitude toward the evidence of habit is based on "the collateral nature of [such] proof, the danger that it may afford a basis for improper inferences, the likelihood that it may cause confusion or operate to unfairly prejudice the party against whom it is directed." *Wilson,* 561 F.2d at 511 (citing *Nelson v. Brunswick Corp.,* 503 F.2d 376, 380 (9th Cir.1974)). It is only when examples offered to establish such pattern of conduct or habit are "numerous enough to base an inference of systematic conduct," that examples are admissible. *Wilson,* 561 F.2d at 511 (citing *Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152, 1158 (2d Cir. 1968)). *See also* 2 Wigmore, Evidence § 376 (3rd ed. 1940). The key criteria are "adequacy of sampling and uniformity of response or ratio of reactions to situations." Advisory Notes, Rule 406, Fed.R. Evid.

We do not attempt here to develop a precise threshold of proof necessary to transform one's general disposition into a "habit"; on a close call, we will find the district court's admission of evidence relating to Loughan's drinking on the job rose to the level of habit pursuant to rule 406. District courts exercise broad discretion in determining the admissibility of evidence and will be reversed only if discretion has been abused. *Hill v. Nelson,* 676 F.2d 1371, 1373 (11th Cir.1982); *see also Worsham v. A.H. Robins, Co.,* 734 F.2d 676 (11th Cir.1984). We find no abuse of discretion.

### Duty to Warn

Loughan asserts that the district court erred when it granted a directed verdict for Firestone on the issue of failure to warn. The record reflects agreement between opposing counsel that because the Firestone rim wheel assembly was not deemed inherently dangerous, Firestone owed no corresponding duty to warn under Florida's

strict liability in tort theory. Conflict arises regarding a manufacturer's duty to warn under the negligence theory.

This circuit has a long-established standard for determining whether sufficient evidence exists to submit a case to the jury following a motion for a directed verdict.

The court should consider *all* evidence, not just that which supports the nonmover's case, in the light and with all reasonable inferences most favorable to the party opposed to the motion. The case should go to the jury if there is substantial evidence, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might reach different conclusions, opposed to the motion for directed verdict. A mere scintilla of evidence cannot present a question for the jury. There must be a conflict in substantial evidence to create a jury question. [Emphasis added.]

*Worsham v. A.H. Robins Co.*, 734 F.2d 676, 681 (11th Cir.1984) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969)).

■ Under Florida law, a manufacturer has a duty to warn users of potential harm which can result through improper use, but this duty extends only to those dangers which are not obvious. *Perez v. National Presto Industries, Inc.*, 431 So.2d 667 (Fla. Dist.Ct.App.), *cert. denied*, 440 So.2d 352 (1983) (citing *Clark v. Boeing Co.*, 395 So.2d 1226 (Fla.Dist.Ct.App.1981)). "A manufacturer is not compelled to warn knowledgeable [users] of the dangers of which the [user] either knows or should be aware." *Perez*, 431 So.2d at 669 (quoting *Foster v. Marshall*, 341 So.2d 1354, 1362 (La.App.1977)).

■ We find that the evidence presented supports the district court's directed verdict. Loughan admitted that he had received instructions regarding the danger of mismatched component parts assembly. Although it was not Loughan's usual practice to read the information stamped on the components, he recognized that reading the printed sizes on the assembly parts was the sure way to avoid mismatches. Further, as Loughan read the size and model printed on the rim and ring involved in his accident, he testified that the language was clear, legible, and free from any rust buildup at the time of the accident. Firestone asserted that because Loughan relied on his "expertise" and routinely failed to read the identification markings stamped on each component, the efficacy of additional warning language was speculative. Evidence presented portrays Loughan as a mechanic knowledgeable of the potential danger involved in mismatching multi-piece assemblies. Accordingly, we find no error.

### Amendment of Complaint

Loughan asserts that the district court erred in refusing to allow him to amend his complaint to include the issue of the defective nature of the 7.33 VR rim base, side and lock ring system, as a whole.[1] Loughan's complaint focused on the dangerous propensity of mismatching rim bases, side rings, and lock rings. During opening arguments, Firestone objected to Loughan's introduction of an additional issue regarding whether the 7.33 VR assembly unit is inherently dangerous as a result of its negligent design. Loughan argues that the complaint sufficiently raises this issue. In denying Loughan's motion to amend his complaint, the district court expressed con-

---

1. In paragraphs 4 and 5 of the complaint, Loughan asserts:

    4. That Firestone adopted plans or designs for two types of truck rims, to wit: the Firestone 7.5 5° rim base, side ring, and lock ring: and the Firestone 7.33 VR side ring and lock ring, and rim base, and sold both types to the public or otherwise placed them in the channels of commerce.

    5. That Firestone failed to use reasonable care in the adoption of the plans or designs for the two types of truck rim referred to in paragraph 4 in that Firestone knew or in the exercise of reasonable care should have known that the components of those truck rims were susceptible of being mismatched, and that the component parts appeared to be interchangeable, when, in reality, they failed to fit properly with one another, making them dangerous for the uses for which they are manufactured.

cern for the unparalleled development of testimony; Loughan's experts would be talking about design defects, while Firestone's experts would be talking about mismatch. We agree with the district court's denial of Loughan's motion to amend his complaint.

▮▮▮▮▮ Loughan asserts that because Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires," the district court should have allowed him to amend his complaint. Rule 15(a) places the granting of motions to amend within the sound discretion of the trial court. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *National Distillers and Chemical Corp. v. Brad's Machine Products, Inc.,* 666 F.2d 492 (11th Cir.1982) In a pretrial stipulation, Loughan cited an additional issue: "7.(f) Whether the 7.33 VR side and lock ring combination mated with a 7.33 VR rim base is inherently dangerous because of its instability as a result of the negligent design of the defendant or its being in a defective condition by reason of its design." The following day, Firestone filed an addendum to the pretrial stipulation specifically rejecting Loughan's additional issue numbered 7.(f). Firestone stated: "[a] Defendant submits that this is not an issue to be tried since this has never been presented as a combination of parts involved in this case." During the following ten months prior to the trial, Loughan made no attempt to amend his complaint, although Firestone made clear that disagreement existed on this issue. Furthermore, Loughan rejected the district court's suggestion to voluntarily dismiss and refile. The trial court properly exercised its discretion in concluding that the amendment was untimely and would result in undue prejudice to Firestone. *Foman,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222.

We find no abuse of discretion on the part of the trial court in denying this amendment.

### Costs

▮▮▮▮ Both Loughan and Firestone challenge the district court's allocation of costs.[2] We find no error in the district court's assignment of costs. In the exercise of sound discretion, trial courts are accorded great latitude in ascertaining taxable costs. *United States v. Kolesar,* 313 F.2d 835 (5th Cir.1963); 28 U.S.C.A. § 1920(2) (West 1966). We find Loughan's arguments insufficient to contest the district court's evaluation of costs. Furthermore, we find Firestone's request for award of expert witness fees to be without merit. *See Kivi v. Nationwide,* 695 F.2d 1285 (11th Cir.1983). Accordingly, we affirm.

AFFIRMED.

---

**2.** Loughan asserts that the district court erred in taxing costs of $5,084.54 as follows: (a) $3,761.35 for the costs of four (4) discovery depositions of Penney and Forney, two of Loughan's witnesses; (b) $377 as costs of service of subpoenas, witnesses, and mileage fees; (c) $700 as costs of photocopying; (d) $1,377.45

as costs for the rental of video equipment and for the operator's fee for attendance at trial; and (e) $450 as travel expenses of witness, Lee, a Firestone Company representative. Firestone asserts that the district court erred in failing to award $34,579.61 as expert witness fees.