[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11963
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20330-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARLAN L. COPELAND,
BRANNOC K. RUDD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(October 21, 2016)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

A federal grand jury charged Marlan Copeland, his brother Vory Copeland, and Brannoc Rudd with one count of conspiracy to commit an offense against the United States, 18 U.S.C. § 371; five counts of theft of government property, 18 U.S.C. § 641; one count of conspiracy to commit wire fraud, 18 U.S.C. § 1349; three counts of wire fraud, 18 U.S.C. § 1343; and eight counts of aggravated identity theft, 18 U.S.C. § 1028A(a)(1).[1]  At trial the jury found Copeland guilty of conspiracy to commit an offense against the United States, five counts of theft of government property, and five counts of aggravated identity theft, and it found him not guilty of the remaining charges.  The jury found Rudd guilty of conspiracy to commit an offense against the United States and it found him not guilty of all other charges.  The district court sentenced Copeland to 72 months imprisonment and Rudd to 60 months imprisonment.  They appeal their convictions and sentences.

## I.

Rudd operated a tax preparation business called Electronic Tax and Insurance Consultants.  His business worked with two banks:  Santa Barbara Bank and Wachovia Bank.  For many years he used Santa Barbara Bank to offer refund anticipation loans (RALs) and refund transfers (RTs) to his clients.  Those services permitted a client to obtain tax preparation services without paying a fee up front.  With an RAL, the bank would immediately loan the client the anticipated refund

---

[1] The district court severed Vory Copeland's trial, and he is appealing separately.  To avoid confusion, in this opinion we will refer to him as "Copeland's brother."

minus its and Rudd's fees, and once the IRS processed the tax return, it would send the refund directly to the bank. With an RT, the IRS would send the refund to the bank, which would in turn deduct its and Rudd's fees, and then Rudd would issue to the client a check for the remainder of the refund. Rudd's clients depended on using one of those two services, so when Santa Barbara Bank stopped offering them in late 2009 or early 2010, his business was in trouble.

In 2009 Copeland's brother's tax preparation business, Tax Express of South Florida (Tax Express), moved next door to Rudd's firm. In January 2010 Rudd, who for years had conducted business at a nearby Wachovia branch, took the Copelands there to open a business checking account for Tax Express. That new account listed the Copelands and Rudd as authorized signatories who each could make deposits and withdrawals. While they were there Rudd introduced the Copelands as his new tax business partners to bank employee Marsha Wooten.

Wachovia had a rule that only account holders could cash checks and that the account-holding payee had to be present when the check was cashed. But because Wooten knew and trusted Rudd, she allowed Copeland and Rudd to cash checks made out to payees who were not account holders, and she allowed them to do so in the payees' absence. She testified that Rudd or Copeland would show her a driver's license bearing the payee's name, and she would write the driver's license number on the front of the check before cashing it. Each check that she

3

cashed for Copeland and Rudd appeared to be signed by the payee. From February to April of 2010 Rudd and Copeland had Wooten cash a number of tax refund checks issued by the United States Treasury made payable to individuals other than themselves. It turned out that a number of those checks were fraudulently obtained through falsely filed tax returns.

At trial a criminal investigator for the IRS testified that forty-four percent of the tax returns filed through Tax Express were fraudulent. Seventeen victims of the check cashing scheme also testified at trial. Each testified that they had either filed a 2009 tax return but had not received a refund, or they had not filed a return and had not expected a refund. They also all testified that their names were on the checks that Wooten cashed for Rudd and Copeland, but that they never received those checks or the funds from them, and that they had not authorized anyone else to cash them.

Rudd testified on his own behalf, asserting that he did not know that the check cashing transactions were fraudulent and that Copeland paid him $100 for every check he helped cash to compensate him for walking the half mile from his office to the bank. He testified that Copeland would go with him to the bank and that Copeland always provided the checks along with the payees' driver's license information. Rudd also testified that between 1988 and when he began working

4

with the Copelands in 2010 he did not regularly cash checks on his clients' behalf, though he had occasionally done so with their permission.

## II.

### A.

Both Copeland and Rudd challenge the sufficiency of the evidence, though they do so on different grounds. We review de novo the sufficiency of the evidence to support a jury verdict, looking at the evidence in the light most favorable to the verdict, and "we will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable doubt." United States v. White, 663 F.3d 1207, 1213 (11th Cir. 2011) (quotation marks omitted). Further, we "draw all reasonable inferences and resolve all questions of credibility in [the verdict's] favor." Id. (quotation marks omitted).

Copeland contends that the evidence was insufficient to show that he knew that the checks he cashed were stolen — a showing necessary to support each of his eleven convictions. He focuses on the lack of direct evidence that he knew the checks were stolen, but knowledge can be — and in many cases, often can only be — shown through circumstantial evidence. See, e.g., United States v. Sosa, 777 F.3d 1279, 1290 (11th Cir. 2015) ("This Court has made clear that, '[b]ecause the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements.'") (quoting

5

United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998)).  Here, the evidence showed that a large number of tax returns were fraudulently filed through Tax Express, a business with which Copeland was associated.  The jury could have inferred from this high volume of fraudulently filed returns that Copeland's cashing of the refund checks was part of the broader tax fraud and identity theft scheme.  And the evidence showed that Copeland brought the checks and driver's licenses to the bank, which supports an inference that he knew the checks originated from fraudulently-filed returns, that the licenses were fake, and that the payees had not authorized that the checks be cashed.  A reasonable jury faced with this evidence could have found that Copeland knew that the checks were stolen.

Rudd challenges the sufficiency of the evidence supporting his conspiracy conviction on two grounds.  First, he contends that his conspiracy conviction should be reversed because the evidence was insufficient to show that he knowingly entered into the conspiracy to commit an offense against the United States.  At trial Rudd testified that he did not know that he was engaging in illegal activity.  The jury's guilty verdict establishes that it rejected that testimony, and it was permitted to consider that testimony as substantive evidence of his guilt.  See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt.").

6

Likewise, the jury was also permitted to reject Rudd's testimony that he legitimately charged a $100 fee to walk a half mile to the bank.  It could have taken that testimony as substantive evidence that the Copelands paid him that money to abuse Wooten's trust and to help them cash the checks.  The evidence was sufficient for the jury to infer that Rudd was a knowing and voluntary participant in the check cashing conspiracy.

Rudd's second insufficiency of the evidence argument focuses on the government's failure to show that the United States, as opposed to the payees themselves, was the targeted victim of the conspiracy.  Rudd did not raise this argument in the district court, and so we review the fact that the district court did not acquit him on this ground only for manifest miscarriage of justice.  See United States v. Esquenazi, 752 F.3d 912, 935 (11th Cir. 2014) ("Where the specific grounds upon which a defendant made his sufficiency-of-the-evidence challenge at trial differ from those he asserts on appeal, we review under his new theory only for manifest miscarriage of justice.").  In other words, we reverse for insufficient evidence only if the conviction is "shocking."  Id. (quotation marks omitted).  "In order to charge a violation under § 371, the government must show that the defendant conspired to commit one or more substantive offenses against the United States, or that the defendant conspired to defraud the government in any manner or for any purpose."  United States v. Harmas, 974 F.2d 1262, 1266 (11th Cir. 1992)

7

(emphasis added).  In other words, § 371 provides "two alternative means of committing a violation."  Id.  Rudd was charged under § 371 for conspiracy to commit an offense against the United States, and to prove he was guilty of that charge "the government need not allege or prove that the United States or an agency thereof was an intended victim of the conspiracy."  United States v. Falcone, 960 F.2d 988, 990 (11th Cir. 1992) (quotation marks omitted).  The government's evidence that the conspiracy targeted the refund checks' payees was enough.  The district court did not err in not acquitting Rudd on that ground.

**B.**

Copeland and Rudd also challenge certain evidentiary rulings.  We review those rulings for an abuse of discretion, and even where the district court has abused its discretion "that ruling will result in reversal only if the error was not harmless."  United States v. Khanani, 502 F.3d 1281, 1292 (11th Cir. 2007).

Copeland contends that the district court erred in allowing the government, under Federal Rule of Evidence 404(b), to use as evidence of his intent his prior conviction for issuing a worthless check.  Evidence of a crime or other wrong may be admissible under Rule 404(b) to prove intent.  Fed. R. Evid. 404(b).  To be admissible, however, "the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act."  United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000).

8

Copeland argues that his prior conviction for issuing a worthless check, which was based on a nolo contendere plea, was insufficient to show that he had actually issued a worthless check. While the government cannot use a nolo contendere plea to prove that a defendant admitted his guilt, see Fed. R. Evid. 410, that plea does not prevent admission under Federal Rule of Evidence 404(b) of the facts underlying the conviction from which the plea was derived. See United States v. Wyatt, 762 F.2d 908, 911 (11th Cir. 1985). And "[i]t is elementary that a conviction is sufficient proof that [a defendant] committed the prior act." United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997). That Copeland's prior conviction arose from a nolo contendere plea "is inconsequential." Id. The government introduced the conviction, not the plea upon which it was based, as evidence of intent under Federal Rule of Evidence 404(b). And that conviction was sufficient to allow the jury to find that he had previously issued a worthless check. The district court did not abuse its discretion by allowing the government to introduce Copeland's prior conviction.

While Copeland challenges what the district court allowed as evidence, Rudd challenges what the district court excluded as evidence. Specifically, Rudd contends that the district court erred by barring testimony from four of his former clients and his expert witness. As to his four former-client witnesses, Rudd argued in the district court that their testimony was admissible under Federal Rule of

9

Evidence 405(a). He now argues instead that the district court should have recognized on its own that their testimony was admissible under Federal Rule of Evidence 406 to show his habit of cashing checks without the payees present but with their authorization. [2]

Rudd raises his Federal Rule of Evidence 406 argument for the first time on appeal, and we review it only for plain error. See United States v. Smith, 459 F.3d 1276, 1295 (11th Cir. 2006). Here, the district court did not plainly err in failing to recognize that the witnesses' testimony was admissible as evidence of habit. Rudd offered their testimony about specific prior occasions when they had given him permission to cash their tax refund checks on their behalf, which he now says corroborates his testimony that he had a habit of doing so.

Under Rule 406 "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion [he] acted in accordance with that habit . . . ." Fed. R. Evid. 406. We have emphasized, however, that habit "is never to be lightly established, and evidence of example, for purpose of establishing such habit, is to be carefully scrutinized before admission." Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1524 (11th Cir. 1985). Specifically, "[i]t is only when

---

[2] Rudd also mentions in passing an alleged Sixth Amendment violation arising from those evidentiary rulings, but he does not offer any argument in support. And he contends that Federal Rule of Evidence 405(a) was an alternative basis for admitting the witnesses' testimony, but he offers no explanation or argument to support that contention. Those two claims are abandoned. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

10

examples offered to establish such pattern of conduct or habit are 'numerous enough to base an inference of systematic conduct,' that examples are admissible." Id. (quoting Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 511 (4th Cir. 1977)).

Rudd testified that between 1988 and 2010 he did not regularly cash checks for his clients. In light of that testimony, the district court did not plainly err when it did not recognize that the witness' testimony giving examples to establish Rudd's alleged habit of systematically cashing clients' checks was admissible under Federal Rule of Evidence 406.

Rudd also contends that the district court abused its discretion in excluding his expert witness' testimony about the difference between RALs and RTs and whether Santa Barbara Bank offered those services. The district court excluded Rudd's expert under Federal Rule of Evidence 403 because the testimony had little probative value, was cumulative, and was likely to confuse the jury. At trial, government witness Christopher Bagg, a Santa Barbara Bank employee, testified generally about RALs, RTs, the difference between them, and about if and when Santa Barbara Bank offered them. Rudd argues that his expert's testimony was not cumulative because it would have clarified Bagg's testimony about whether Santa Barbara Bank offered RALs and RTs before 2010. Both Copeland's and Rudd's counsel cross-examined Bagg, and during that cross-examination counsel pressed

11

him on the issue of whether Santa Barbara Bank provided RALs and RTs. And Bagg testified about what RALs and RTs are and about the differences between them on direct and cross-examination. Because Rudd's expert's testimony offered background details that Bagg had already given, the district court did not abuse its discretion in finding that it would have been cumulative and would have obscured the key issues at trial.[3]

Rudd next argues that his trial counsel's failure to argue that the four former client witnesses' testimony was admissible under Federal Rule of Evidence 406 constituted ineffective assistance of counsel. We seldom decide ineffective assistance of counsel claims on direct appeal, and we decline to do so here. Rudd can raise this claim in a 28 U.S.C. § 2255 proceeding.

## C.

Rudd also contends that the district court erred in giving a deliberate ignorance instruction. "We apply a deferential standard of review to a trial court's jury instructions [and will] only reverse if we are left with substantial and eradicable doubt as to whether the jury was properly guided in its deliberations."

---

[3] While Rudd also argues that the district court's exclusion of all of his witnesses also violated his Fifth Amendment right to present a full defense, "it is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." United States v. Ruggiero, 791 F.3d 1281, 1290 (11th Cir. 2015). Because his witnesses' testimony was inadmissible, the district court did not violate Rudd's Fifth Amendment rights.

12

United States v. Steed, 548 F.3d 961, 977 (11th Cir. 2008) (quotation marks

omitted).  The district court instructed the jury on deliberate ignorance as follows:

> The government may prove that a person acted knowingly by proving
> beyond a reasonable doubt that the person deliberately closed his eyes
> to what otherwise would have been obvious to him.  One cannot avoid
> responsibility for an offense by deliberately ignoring what is obvious.
> But I must emphasize that negligence, carelessness or foolishness isn't
> sufficient to prove knowledge.

 Rudd contends that the district court erred in giving that instruction because no

evidence showed that he was deliberately ignorant of the Copelands' fraud.  He

further argues that the charge itself was faulty because it did not include an

example of deliberate ignorance provided in the Eleventh Circuit Pattern Jury

Instructions.  However, "So long as the instructions accurately reflect the law, the

trial judge is given wide discretion as to the style and wording employed in the

instructions."  United States v. Zlatogur, 271 F.3d 1025, 1029 (11th Cir. 2001).

Rudd offers no persuasive reason why the instruction that was given failed to

properly state the law, and we consider as abandoned his claim that the instruction

was faulty.  See Sapuppo, 739 F.3d at 681.

As for Rudd's argument that the district court's decision to give the

instruction, the deliberate ignorance instruction is not appropriate when the

evidence only goes to actual knowledge and not intentional avoidance of

knowledge.  Steed, 548 F.3d at 977.  Any error in giving the instruction, however,

is harmless "if the jury could have convicted on an alternative, sufficiently

13

supported theory of actual knowledge." United States v. Kennard, 472 F.3d 851, 858 (11th Cir. 2006).   As we have already explained, the evidence was sufficient to support a finding of Rudd's actual knowledge of the fraud, so any error in giving the deliberate ignorance instruction is harmless.  See United States v. Stone, 9 F.3d 934, 938 (11th Cir. 1993) ("If . . . there was insufficient evidence of deliberate ignorance to prove that theory beyond a reasonable doubt, then the jury, following the instruction, as we must assume it did, did not convict on deliberate ignorance grounds.  The only way we can conclude that the deliberate ignorance instruction was harmful is if we assume that the jury applied the instruction contrary to its express terms.  That is an assumption which we cannot and will not make.").

## D.

Finally, Copeland and Rudd each challenge their sentences.  They contend that the district court violated their Sixth Amendment rights during sentencing by considering conduct for which they were acquitted.  We have squarely and repeatedly rejected the contention that it is a Sixth Amendment violation to consider acquitted conduct in sentencing for the offense of conviction.  See, e.g., United States v. Faust, 456 F.3d 1342, 1347 (11th Cir. 2006).

Rudd also argues that the district court erred in applying a two level obstruction of justice enhancement under the sentencing guidelines because the evidence was insufficient to support the district court's finding that he committed

14

perjury at trial. Here we "review the district court's findings of fact for clear error and the application of the Guidelines to those facts de novo." United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006). Section 3C1.1 of the sentencing guidelines provides that a two level enhancement is appropriate if the district court finds that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice," U.S.S.G. § 3C1.1, which can include perjury. See United States v. Dunnigan, 507 U.S. 87, 93–94, 113 S. Ct. 1111, 1115–16 (1993). The district court found that Rudd committed perjury when he testified that he did not know about the fraudulent nature of the conspiracy. Rudd argues that the district court erroneously based that finding solely on the jury's guilty verdict.

While "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury," United States v. Dunnigan, 507 U.S. 87, 95, 113 S. Ct. 1111, 1117 (1993), the district court did not clearly err by finding that Rudd committed perjury. For the jury to have returned a guilty verdict, it necessarily had to reject Rudd's testimony that he did not know the fraudulent nature of the scheme. And the district court found that Rudd gave that testimony knowing it was false in an attempt to deceive the jury into believing that he was innocent. The district court did not err by imposing a two level obstruction of justice enhancement to Rudd's sentence.

15

**AFFIRMED.**