USCA1 Opinion

 

 December 31, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ ____________________ No. 91-2303 No. 91-2303 UNITED STATES OF AMERICA, UNITED STATES OF AMERICA, Appellee, Appellee, v. v. MICHAEL J. NEWMAN, MICHAEL J. NEWMAN, Defendant, Appellant. Defendant, Appellant. ____________________ ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ ____________________ Before Before Cyr, Circuit Judge, Cyr, Circuit Judge, _____________ Roney,* Senior Circuit Judge, Roney,* Senior Circuit Judge, ____________________ and Pieras,** District Judge. and Pieras,** District Judge. ______________ ____________________ ____________________ John A. MacFadyen for appellant. John A. MacFadyen for appellant. _________________ Craig N. Moore, Assistant United States Attorney, with whom Craig N. Moore, Assistant United States Attorney, with whom ________________ Lincoln C. Almond, United States Attorney, was on brief for appellee. Lincoln C. Almond, United States Attorney, was on brief for appellee. _________________ ____________________ ____________________ ____________________ ____________________ *Of the Eleventh Circuit, sitting by designation. *Of the Eleventh Circuit, sitting by designation. **Of the District of Puerto Rico, sitting by designation. **Of the District of Puerto Rico, sitting by designation. CYR, Circuit Judge. Michael J. Newman appeals his CYR, Circuit Judge. _____________ conviction and sentence on one count of depriving a pretrial detainee of his civil rights under color of law in violation of 18 U.S.C. 242. We affirm. I I BACKGROUND BACKGROUND __________ Viewed in the light most favorable to the verdict, see ___ United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. _____________ _______________ 1991), the evidence presented at trial warranted the following jury findings. On October 6, 1990, Daniel Peterson was arrested in Providence, Rhode Island, for drinking in public. A record check revealed outstanding warrants against Peterson. Appellant Michael J. Newman was the officer in charge of the cell block where Peterson was detained. After being placed in a cell, Peterson began to yell and scream, then picked up the porcelain toilet in the cell and hurled it through the bars. Appellant Newman and another officer removed Peterson to a nearby cell. Peterson put up mild resis- tance and his wrists were handcuffed to the cell bars. Shortly after the officers left, Peterson resumed his yelling and scream- ing, which prompted appellant Newman to return to the cell. While still handcuffed to the cell bars, Peterson was beaten and kicked in the stomach and head by appellant. Peterson sustained injuries to his face, nose, eyes, and inner ear, and experienced difficulty in breathing. He remained in a local hospital for a week, where he experienced dizziness, severe headaches, and other physical pain. Extensive medical tests proved negative. Newman was indicted, tried, and convicted for interfer- ing with Peterson's civil rights under color of law, and sen- tenced to sixty months in prison and a two-year term of super- vised release. II II DISCUSSION DISCUSSION __________ Appellant presents four claims. First, he claims that the court committed error by excluding certain "habit" evidence proffered under Federal Rule of Evidence 406. Second, he con- tends that he was entitled to a new trial due to juror inatten- tiveness. Third, he disputes the finding that the alleged assault involved "serious bodily injury." Finally, Newman attempts for the first time to assert that the sentence imposed pursuant to U.S.S.G. 2A2.2(b) (3)(B) and 2H1.4(a)(2) had the impermissible effect of "double counting" any "serious bodily injury" inflicted on Peterson. A. Evidence Rule 406 A. Evidence Rule 406 _________________ At trial, the defense attempted to introduce Providence Police Sergeant MacDonald's testimony that he had seen between 75 and 100 prisoners handcuffed to the cell bars, but never to the first bar. MacDonald's testimony was offered to support Newman's testimony that he had handcuffed Peterson to the third bar of the 4 cell and not to the first bar as Peterson testified. The issue became material in light of the trial testimony of Daniel Greene, a detainee in the same cell block, who claimed to have seen Peterson's cuffed hands protruding through the bars during the assault. The evidence demonstrated that Greene could have seen Peterson's hands only if they were cuffed to the first bar. The district court sustained the government's objection to the proffered testimony. Under Rule 406, competent evidence of a person's "habit" may be admissible to prove conduct in conformity with the habit on a particular occasion. Reyes v. Missouri P. R. Co., 589 _____ __________________ F.2d 791, 794 (5th Cir. 1979); see also John H. Strong, McCormick ___ ____ _________ on Evidence 195 (4th ed. 1992); 1A John A. Wigmore, Evidence ____________ ________ 95 (Tillers rev. 1983).1 The party offering the evidence must establish the habitual nature of the alleged practice. Weil v. ____ Seltzer, 873 F.2d 1453, 1461 (D.C. Cir. 1989). As with other _______ exclusionary rulings, the party challenging an exclusion of habit evidence under Rule 406 bears the heavy burden of demonstrating on appeal that the trial court abused its discretion. McWhorter _________ v. Birmingham, 906 F.2d 674, 675 (11th Cir. 1990); Rosenburg v. __________ _________ ____________________ 1Evidence Rule 406 states: Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. Fed. R. Evid. 406. 5 Lincoln American Life Ins. Co., 883 F.2d 1328, 1337 (7th Cir. _______________________________ 1989); Weil, 873 F.2d at 1460; United States v. Troutman, 814 ____ _____________ ________ F.2d 1428, 1454 (10th Cir. 1987); see also United States v. ___ ____ ______________ McCarthy, 961 F.2d 972, 977 (1st Cir. 1992) (we review rulings on ________ the admissibility of evidence for "abuse of discretion"). Habit evidence under Rule 406 may be probative of "'the regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand- signal for a left turn . . . .'" Fed. R. Evid. 406, advisory committee's note (quoting McCormick, Evidence 195 at 826); ________ Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1524 (11th _______ ___________________________ Cir. 1985). Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed. R. Evid. 406, adviso- ry committee's notes; McWhorter, 906 F.2d at 679; G.M. Brod & Co. _________ _______________ v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985); Loug- _______________ _____ han, 749 F.2d at 1529; Weil, 873 F.2d at 1460; Reyes, 589 F.2d at ___ ____ _____ 795. These factors focus on whether the behavior at issue "occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances." Weil, 873 F.2d at 1460. The requisite regularity is ____ tested by the "'ratio of reaction to situations.'" Wilson v. ______ Volkswagen of America, Inc., 561 F.2d 494, 512 (4th Cir. 1977) ____________________________ (quoting Lewan, Rationale of Habit Evidence, 16 Syracuse L. Rev. ___________________________ 6 39, 51 (1964)), cert. denied, 434 U.S. 1020 (1978); Weil, 873 ____ ______ ____ F.2d at 1461; Simplex, Inc. v. Diversified Energy Systems, Inc., _____________ ________________________________ 847 F.2d 1290, 1294 (7th Cir. 1988). It is essential, therefore, that the regularity of the conduct alleged to be habitual rest on an analysis of instances "'numerous enough to [support] an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation.'" Wilson, 561 F.2d at ______ 511 (quoting Fed. R. Evid. 406, advisory committee's notes). Appellant's proffer failed to demonstrate the admis- sibility of the MacDonald testimony under Rule 406. Appellant provided no foundation for assessing the adequacy of the sampling to which MacDonald would testify. There was no evidence even approximating the number of times prisoners were handcuffed to the cell bars.2 Absent some evidence of the number of instances in which the handcuffing practice took place, we cannot conclude that the district court abused its discretion. An officer's observation of 75 to 100 such instances did not require the _______ conclusion that the putative practice was followed with the necessary regularity. See Brod, 759 F.2d at 1533 (testimony ___ ____ concerning specific instances within experience of witness, when considered in light of thousands of unobserved similar instances, "falls far short of the adequacy of sampling and uniformity of response which are the controlling considerations governing admissibility"). ____________________ 2The district court nonetheless allowed appellant to testify that he and other officers "always cuffed prisoners" to the third bar. 7 Other considerations reinforce the conclusion that the district court did not abuse its discretion. First, Sergeant MacDonald testified that there was no "rule or practice that's followed" about where to handcuff prisoners but that "[t]he officers involved . . . at the time would decide where to hand- cuff them and how to do it." Second, we are aware of no case, and appellant cites none, in which the routine practice of an organization, without more, has been considered probative of the conduct of a particular individual within the organization. See ___ United States v. Angelilli, 660 F.2d 23, 41 (2d Cir. 1981), cert. _____________ _________ ____ denied, 455 U.S. 910, cert. denied, 455 U.S. 945 (1982) (ques- ______ ____ ______ tioning whether it is proper on the basis of the "ambiguous structure of Rule 406" to infer individual behavior based on evidence of routine practice of the organization). The exclus- ionary ruling under Evidence Rule 406 did not constitute error. B. Juror Inattentiveness B. Juror Inattentiveness _____________________ Appellant contends that the district court (1) failed to conduct adequate inquiry into allegations that one or more jurors slept during portions of the trial, and (2) committed reversible error by denying a new trial based on the alleged juror inattentiveness. At one point during trial, on July 10, the presiding judge observed a juror who appeared as though he may have been 8 asleep.3 Immediately, the judge advised all counsel and offered to replace the juror with an alternate. Defense counsel declined the offer. The judge promptly and firmly cautioned all members of the jury on the importance of devoting full attention to the evidence. After trial, three putative eyewitnesses submitted letters recounting their observations of one or more jurors who appeared to be sleeping during parts of the trial.4 These letters formed the basis for appellant's motion for new trial. The district court stated that it had "noted the incidents in question and promptly brought it to the attention of ____________________ 3The presiding judge described the related events as fol- lows: [D]uring the trial I called counsel to the bench; as I recall, I told them that I had observed a juror with his eyes closed and that the juror may have been sleep- ing. I did not say the juror was sleeping, nor can it be said that he was. I did not see any jurors' head fall 'to the side' with his chin 'on his chest' as described by one of the letter writers. Both the prosecutor and the defense counsel acknowledged they too had noticed what I observed. I offered to excuse the juror and have him replaced with an alternate. In no uncertain terms, defense counsel objected. 4Each of the three letters describes one juror who appeared to be asleep. Two of the letters refer to July 10 and appear to refer to the same juror and the same incident. According to one letter, a juror in the back row slept for ten minutes during the testimony of Dr. Welch. The second letter refers to a juror in the back row who rested his head on the wall and appeared to have his eyes closed for about ten minutes, but the letter does not indicate what was transpiring in the trial at the time. The third letter appears to refer to another juror at another time. It describes a juror in the front row who slept through most of the testimony of Dr. Green and when he awoke asked another juror: "What did he say?" The letter states that this juror slept during the testimony of a police officer and on and off during the testimony of all three doctors. Although the letter does not indicate the date on which these observations were made, the witnesses to which it refers testified on July 9 and July 10. 9 counsel in a[n] [unrecorded] bench conference," but that defense counsel rejected the court's offer to replace the juror.5 The court noted further that there was no firm evidence that the juror had been asleep. The court offered to submit to an inter- rogation on the record by defense counsel as to its recollection of the incidents, which was confirmed by the prosecutor. The proposal was not endorsed by defense counsel. Defense counsel requested neither further investigation, nor an evidentiary hearing, into the allegations contained in the letters submitted after trial. The district court determined that any inattentive- ness which may have occurred was limited to "an isolated moment" in a week-long trial, thus implicitly determining that there had been no prejudice to appellant. The motion for new trial was denied. Appellant belatedly challenges the adequacy of the district court's investigation into the letter allegations of juror inattentiveness. The gravamen of the unpreserved claim is that the three letters allege juror inattentiveness on more than one day and apparently by more than one juror, whereas the __________ district court merely addressed the inattentiveness of one juror, on July 10. According to appellant, the failure to investigate these letter allegations rendered it impossible to determine whether he was deprived of a fair trial. ____________________ 5The district court noted in its memorandum order that defense counsel vigorously opposed replacement of the inattentive juror, as a denial of defendant's "right to have his case heard by a juror of [his] choice." 10 The "district court has broad discretion to determine the type of investigation which must be mounted[]" in response to an allegation of juror misconduct. United States v. Boylan, 898 _____________ ______ F.2d 230, 258 (1st Cir.), cert. denied, 111 S. Ct. 139 (1990). ____ ______ An evidentiary hearing is not invariably required. Id. (citing ___ cases). Rather, it is the responsibility of the trial court "to fashion a responsible procedure for ascertaining whether miscon- duct actually occurred and if so, whether it was prejudicial." Id.; United States v. Hunnewell, 891 F.2d 955, 961 (1st Cir. ___ _____________ _________ 1989). A determination that no juror misconduct occurred will be overturned only on a showing that the trial court committed a "patent abuse of discretion." Id. Similarly, the denial of a ___ motion for new trial is reviewed for abuse of discretion. United ______ States v. Soto-Alvarez, 958 F.2d 473, 475 (1st Cir.), cert. ______ ____________ _____ denied, 113 S. Ct. 221 (1992); United States v. Dockray, 943 F.2d ______ _____________ _______ 152, 157 (1st Cir. 1991). We find no abuse of discretion in the district court's handling of the allegations of juror inattentiveness, see Boylan, ___ 898 F.2d at 258 ("district court has discretion to determine the type of investigation which must be mounted"), or in its denial of the motion for new trial. First, defense counsel neither requested an evidentiary hearing nor an investigation into the vague and conclusory allegations contained in the three letters. Indeed, the presiding judge viewed the belated allegations as "a disingenuous attempt to set aside the jury verdict." After considering the allegations, the court concluded that the "inc- 11 idents" in question had been dealt with adequately by the earlier offer, at the unrecorded bench conference on July 10, to replace an inattentive juror, and by the instruction reminding all jurors of their duty to remain attentive. Insofar as the court correctly treated the incidents collectively recounted in the three letters to have been consid- ered and dealt with at the unrecorded bench conference on Ju- ly 10, appellant was entitled to no further relief. Notwith- standing the court's invitation, appellant chose not to challenge the judge's description as to what transpired at the unrecorded July 10 bench conference,6 and opposed replacement of the inat- tentive juror. Appellant will not now be heard for the first time to challenge the district court's determination that the entire matter was dealt with during the unrecorded July 10 bench conference. See United States v. Kimberlin, 805 F.2d 210, 244 ___ _____________ _________ (7th Cir. 1986), cert. denied, 483 U.S. 1023 (1987) (no error ____ ______ where court brought to attention of counsel that a juror appeared to be sleeping, but neither side requested juror replacement). On the other hand, insofar as appellant may have believed that the three letters collectively recounted one or more other ____________________ 6In denying the motion for new trial, the district court noted that "[t]he absence of a record forces me to note my personal recollection, which varies from the aforementioned letters but is corroborated by the prosecutor. I feel it is unfair to have my unrecorded statement go to the appellate court without affording counsel an opportunity to question it. The defendant's lawyer is very experienced and sophisticated and, I am sure, not awed by any court. If he wishes, I am perfectly willing to have him interrogate me on the record, in chambers, and attach a transcript of our meeting as part of this Memoran- dum." 12 instances of juror inattentiveness not dealt with at the unre- corded bench conference, he not only failed to avail himself of the opportunity to test the contrary recollection recorded by the court but requested neither further investigation nor an eviden- tiary hearing, insisting instead upon a new trial as the only acceptable remedy. Cf. United States v. Schnabel, 939 F.2d 197, ___ _____________ ________ 201 (4th Cir. 1991) (no prejudicial error in court's refusal to grant supplementary voir dire where defendant declined court's offer to excuse juror.) The district court did not abuse its discretion in concluding that no prejudicial juror misconduct occurred. C. U.S.S.G. 2H1.4(a)(2) C. U.S.S.G. 2H1.4(a)(2) ______________________ 1. "Serious Bodily Injury" 1. "Serious Bodily Injury" _____________________ Section 2H1.4(a)(2) provides that the base offense level for interference with civil rights under color of law is to be set six levels above the base offense level for the underlying offense. At sentencing, the district court determined that the underlying offense was an aggravated assault, as it involved "serious bodily injury." See U.S.S.G. 2A2.2, comment. (n.1). ___ Thus, the base offense level was set at 21, then adjusted upward four more levels, pursuant to U.S.S.G. 2A2.2(b)(3)(B), because the victim suffered "serious bodily injury," which yielded a total offense level of 25. At the outset, appellant challenges the district court finding that Peterson suffered "serious bodily injury," which he claims led the court into reversible error both in its determina- 13 tion that the underlying offense constituted an aggravated assault and in its further four-level upward adjustment for causing "serious bodily injury." First, we must determine the appropriate standard of review. The parties agree that whether the assault involved "serious bodily injury" presents a mixed question of law and fact. In light of their concession, in the present case we review for "clear error." Cf., e.g., United States v. Pilgrim ___ ____ ______________ _______ Market Corp., 944 F.2d 14, 17 (1st Cir. 1991) (concluding that 18 ____________ U.S.C. 3742(e) and First Circuit precedent require "clear error" review of the mixed question of law and fact relating to the grouping of counts, even though other circuits would conduct de novo review).7 Under a "clear error" standard of review, __ ____ ____________________ 7"Plain error" may even be the appropriate standard of review in the present case. Although the issue of "serious bodily injury" was contested in the district court, appellant inconsistently conceded that "the base level of 21 obviously is appropriate." A base offense level of 21 would be appropriate in the present case only if the assault was "aggravated," rather than "minor." Moreover, since there is no contention that the offense involved either a dangerous weapon or intent to commit another felony, it could be determined an aggravated assault only if it involved "serious bodily injury." Compare U.S.S.G. 2A- _______ 2.2, comment. (n.1) ("'Aggravated assault' means a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm . . ., or (b) serious bodily injury, or (c) an intent to commit another felony.") with U.S.S.G. 2A2.3, comment. (n.1) ____ ("'Minor assault' means a . . . felonious assault not covered by 2A2.2"). Since the adjusted base offense level of 21 was not challenged below, ordinarily we would review the finding of "serious bodily injury" only for "plain error" insofar as it served as a predicate for the determination that the underlying offense constituted an "aggravated assault." See United States ___ _____________ v. Bello-Perez, No. 91-2232, slip op. at 19 (1st Cir. Sept. 29, ___________ 1992) (application of guideline to specific facts reviewed only for "plain error" unless raised below); United States v. Morales- _____________ ________ Diaz, 925 F.2d 535, 540 (1st Cir. 1991) (same). The issue is of ____ no practical consequence in the present case, however, as we 14 "where more than one reasonable inference may be drawn from undisputed facts, 'the sentencing court's choice among support- able alternatives cannot be clearly erroneous.'" United States _____________ v. Preakos, 907 F.2d 7, 8 (1st Cir. 1990) (quoting United States _______ _____________ v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990)); see also United ____ ___ ____ ______ States v. McLaughlin, 957 F.2d 12, 17 (1st Cir. 1992). ______ __________ The Sentencing Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the impair- ment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitaliza- tion, or physical rehabilitation." U.S.S.G. 1B1.1(j). The sentencing court supportably found that Peterson sustained injury to his inner ear. The ear is "the organ of hearing and equilib- rium," which includes "a fluid-filled internal ear that main- tains balance and that conducts the tympanic vibrations to the auditory nerve, which transmits them as impulses to the brain." Random House, Unabridged (2d ed. 1987), at 613. Medical testimo- ____________ ny was presented that upon entering the hospital Peterson com- plained of dizziness and tinnitus. While tests were "unreveal- ing," the examining neurosurgeon testified that it was "not unusual" for inner ear damage to be evidenced solely by the patient's "subjective complaints." Moreover, Peterson was hospitalized for six days as a result of the beating administered to his head, which caused severe headaches, facial bruising and hemorrhaging around the eyes and under the scalp, in addition to ____________________ discern neither "clear" nor "plain" error. 15 the inner ear injury. See U.S.S.G. 1B1.1(j) (defining "serious ___ bodily injury" as "injury involving extreme physical pain" or __ "impairment of a bodily . . . organ . . .," or "requiring . . . __ hospitalization . . . ."). We discern no clear error in the finding that the assault caused "serious bodily injury." 2. "Double Counting" 2. "Double Counting" _______________ Finally, Newman claims for the first time that the district court engaged in impermissible "double counting," as the four level increase in the base offense level, see U.S.S.G. ___ 2A2.2(b)(3)(B), was predicated on the same finding of "serious bodily injury" that prompted the fifteen level adjustment in the base offense level for the underlying offense, see id. ___ ___ 2H1.4(a)(2), "aggravated assault," see id. 2A2.2(a). ___ ___ As the "double counting" claim was not raised below, we consider whether it may be raised on appeal. Although pure issues of law may be raised for the first time on appeal in "exceptional cases," normally we will entertain an unpreserved legal claim only if the failure to do so would result in a "rank miscarriage of justice." See United States v. La Guardia, 902 ___ _____________ __________ F.2d 1010, 1012-13 (1st Cir. 1990) (listing factors); United ______ States v. Krynicki, 689 F.2d 289, 291-92 (1st Cir. 1982) (same). ______ ________ The district court sentenced defendant to 60 months in prison. Were it not for the challenged four level increase in appellant's base offense level under U.S.S.G. 2A2.2(b)(3)(B), which yielded a 57-to-71 month GSR, the total adjusted offense 16 level would have been 21, yielding a 37-to-46 month GSR. Assum- ing the challenged four level increase was impermissible, yet not reviewable on appeal, Newman would be compelled to serve no less than fourteen months longer than the maximum sentence allowable under the appropriate GSR. We are persuaded, therefore, that the requisite showing has been made for discretionary review of appellant's unpreserved claim. After supportably finding that the assault caused "serious bodily injury," the sentencing court calculated appel- lant's base offense level in exact accordance with the plain language of the applicable sentencing guidelines. Pursuant to U.S.S.G. 2H1.4(a)(2), the court set the base offense level at 21 six levels above the base offense level of 15 for the underlying offense of "aggravated assault," see U.S.S.G. 2A2.2 ___ (b) ("a felonious assault that involved . . . (b) serious bodily injury") then increased it four levels, pursuant to U.S.S.G. 2A2.2(b)(3)(B), because the victim sustained "serious bodily injury." Thus, the first hurdle appellant must overcome is that the applicable sentencing guidelines expressly mandate the "double counting" challenged on appeal.8 ____________________ 8Although no appellate court has yet considered this par- ticular "double counting" issue, there is a divergence between the two courts of appeals which have addressed the closely analogous question whether a defendant's base offense level can be increased pursuant to U.S.S.G. 2A2.2(b)(2)(a) for using a dangerous weapon, notwithstanding that the same factor formed the _________ ______ predicate for finding the underlying offense an aggravated assault, see U.S.S.G. 2A2.2(a), comment. (n.1) ("'aggravated ___ assault' means a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm . . ."). See United States ___ _____________ v. Williams, 954 F.2d 204, 206-08 (4th Cir. 1992) ("double ________ 17 As with statutory language, see, e.g., North Dakota v. ___ ____ ____________ United States, 460 U.S. 300, 312 (1983); Benoni v. Boston & Maine _____________ ______ ______________ Corp., 828 F.2d 52, 57 (1st Cir. 1987), we think the plain and _____ unambiguous language of a sentencing guideline affords the best recourse for its proper interpretation, cf. United States v. ___ _____________ Williams, 954 F.2d 204, 206 (4th Cir. 1992) ("double counting" ________ required since Sentencing Guidelines "must be applied as writ- ten"); United States v. Florentino, 922 F.2d 1443, 1446 (10th ______________ __________ Cir. 1990) ("double counting" permissible where "clear and unambiguous" guideline language indicates Commission so intended) (applying 2L1.1 adjustment for prior conviction already re- flected in criminal history category). Furthermore, the district court's application of U.S.S.G. 2A2.2(b)(3)(B) accords with the apparent intent of the Sentencing Commission as evidenced not only by the plain and unambiguous guideline language but by other intrinsic considerations as well. For example, the Commission's awareness of the sentencing excesses which flow from impermissi- ___________ ble "double counting" is plainly reflected in other guideline ___ application notes expressly forbidding it. See, e.g., U.S.S.G. ___ ____ 3A1.1 comment. (n.2) (no "victim related" adjustment when offense guideline specifically incorporates same 3A1.1 factor); _______ 3A1.2 comment. (n.3) (same); 3A1.3 comment. (n.2) (same); cf. ___ 3D1.2 comment. (n.5) (application note governing grouping of closely related counts "prevents double counting of offense _______ ____________________ counting" required); but see United States v. Hudson, 972 F.2d ___ ___ _____________ ______ 504, 506-07 (2d Cir. 1992) (expressly disagreeing with Williams). ________ 18 behavior.") (emphasis added). "Under the principle of expressio _________ unius est exclusio alterius, the enumeration of specific exclu- _____ ___ ________ ________ sions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded." United States v. Rocha, 916 F.2d 219, 243 (5th Cir. 1990), cert. _____________ _____ ____ denied, 111 S. Ct. 2057 (1991) (citing United States v. Vickers, ______ _____________ _______ 891 F.2d 86, 88 (5th Cir. 1989) ("double counting" for ransom demand pursuant to 2A4.1(b)(1) and for extortion pursuant to 2A4.1(b)(5) not improper)); United States v. Curtis, 934 F.2d _____________ ______ 553, 555 (4th Cir. 1991) ("double counting" for more than minimal planning under 2B1.1(b)(4) and as organizer and manager under 3B1.1(c) not improper); see also United States v. Goolsby, 908 ___ ____ _____________ _______ F.2d 861, 863 (11th Cir. 1990) (refusing "to fashion an exception [to "double counting"] since the Commission has demonstrated its ability to do so in those areas it has deemed an exception to be appropriate") (crime of escape considered under both 4A1.1(d) and 2P1.1(a)(1)). Cf. United States v. McInnis, 976 F.2d 1226, ___ _____________ _______ 1233-35 (9th Cir. 1992) (applying 2H1.3(a)(2),(3) where "under- lying offense" was deemed an aggravated assault per 2A2.2(b)- (3)(B)) ("double counting" not addressed); but cf. United States ___ ___ _____________ v. Hudson, 972 F.2d 504, 507 (2d Cir. 1992) (it is not the law in ______ the Second Circuit that "double counting is always permissible, except when explicitly forbidden by the Guidelines") (citing cases); United States v. Romano, 970 F.2d 164, 167 (6th Cir. _____________ ______ 1992) (defendant should not be penalized for same conduct under two different guideline provisions "whether or not the Guidelines 19 expressly prohibit" doing so); United States v. Werlinger, 894 _____________ _________ F.2d 1015, 1017 (8th Cir. 1990) (rule of lenity requires that Guidelines not be readily construed to multiply punishment of conduct already punished through the application of another guideline provision); United States v. Adeleke, 968 F.2d 1159, _____________ _______ 1161 (11th Cir. 1992) ("double counting" proper "if the Sentenc- ing Commission intended the result, and if the result is permis- ___ sible because 'each section concerns conceptually separate notions relating to sentencing'") (quoting United States v. ______________ Aimufua, 935 F.2d 1199, 1201 (11th Cir. 1991)) (emphasis added). _______ Closer to home, U.S.S.G. 2H1.4 itself reflects that it was drafted with the excesses of impermissible "double count- ing" clearly in mind. In prescribing that the base offense level for interfering with civil rights under color of law is to be the greater of level 10, or 6 levels above that of the underlying offense (here, aggravated assault), the guideline application note to U.S.S.G. 2H1.4 first directs the sentencing court to the section 2H1.1 commentary, U.S.S.G. 2H1.4, comment. (n.1), then mandates: "Do not apply the adjustment from 3B1.3 (Abuse of Position of Trust or Use of Special Skill)," id. 2H1.4, ___ comment. (n.2), "because the base offense level in 2H1.4(a) reflects that the abuse of actual or purported legal authority is inherent in the offense," id. 2H1.4, comment. (backg'd.) ________ ___ (emphasis added). By way of contrast, section 2H1.4 gives no indication whatever that the offense level should not be in- creased where the person who is deprived of his civil rights 20 under color of law sustains bodily injury, as in the present case. We believe the reason is clear: bodily injury is not an ___ inherent characteristic of the offense of interfering with civil rights under color of law. Moreover, the immediately preceding guideline, U.S.S.G. 2H1.3 (Use of Force or Threat of Force to Deny Benefits or Rights in Furtherance of Discrimination: Damage to Religious Real Property), represents a deliberate Commission determination to increase the base offense level for a civil rights violation if the defendant inflicts bodily injury on the victim. Section __ 2H1.3 prescribes alternative base offense level increases depend- ing on whether the victim sustained injury. Id. 2H1.3(a)- ___ (1),(2) (increase by 10 if no injury occurred; by 15 if injury occurred). The section 2H1.3 commentary, appearing a scant four lines above section 2H1.4 (Interference with Civil Rights Under Color of Law), explains: "The base offense level in 2H1.3(a) ___ ____ _______ _____ __ _ ________ reflects that the threat or use of force is inherent in the ________ ____ ___ ______ __ ___ __ _____ __ ________ __ ___ offense." U.S.S.G. 2H1.3 comment. (backg'd.) (emphasis added); _______ to which we would add, simply: unlike the offense of interfering with civil rights under color of law, see id., 2H1.4, which ___ ___ involves neither bodily injury nor the threatened or actual use _______ ___ of force as an inherent offense characteristic. ________ Finally, applying these sentencing guidelines in accordance with their plain and unambiguous language promotes proportionality in sentencing, an important congressional objec- tive of guideline sentencing. U.S.S.G., Ch. 1, Pt. A, intro. 2, 21 p.s. (Congress sought "proportionality in sentencing through a system that imposes appropriately different sentences for crimi- nal conduct of differing severity"). U.S.S.G. 2A2.2(b)(3) prescribes incremental sentence adjustments scaled to the severi- ty of the bodily injury inflicted on the victim. For example, while "serious bodily injury" requires a four level increase, "permanent or life-threatening bodily injury" necessitates a six level increase. U.S.S.G. 2A2.2(b) (3)(B-C). If we were to conclude, as appellant urges, that impermissible "double count- ing" resulted from the four level increase for "serious bodily injury," no increase in the offense level would be permissible even for the more egregious infliction of "permanent or life- threatening bodily injury," see id. 2A2.2(b)(3)(D), where the ___ ___ assault likewise was determined to have been aggravated in light of the degree of bodily injury sustained by the victim, see id. ___ ___ 2H1.4(a)(2). The carefully calibrated offense level adjustment scheme prescribed in U.S.S.G. 2A2.2(b)(3), cf. Williams, 954 ___ ________ F.2d at 206 ( 2A2.2(b)(2) "rationally reflects the Guideline's graduated adjustment scheme" for possessing a weapon), would be disarranged in such cases, as the base offense level could not be increased either in response to an assault which caused "pe- rmanent or life-threatening injury," U.S.S.G. 2A2.2(b)(3)(D), or one which caused "serious bodily injury," U.S.S.G. 2A2.2(b)- (3)(C). Thus, in sum, we think the carefully structured sen- tencing scheme in Chapter Two, Part H, as a whole, no less than __ _ _____ 22 U.S.S.G. 2H1.4 in particular, constitutes a considered resolu- _______ tion of the "double counting" issue raised on appeal, rather than ____ evidence of the Commission's failure to recognize it. As there was no impermissible "double counting," we reject the contention that the district court was required to disregard the plain and unambiguous language of U.S.S.G. 2A2.2(b)(3)(B) and 2H1.4(a)- (2). For the foregoing reasons, the sentence imposed by the district court must be affirmed. Affirmed. Affirmed. ________ 23