**Obi OKEHI; Sue Beasley; Judy S. Veal; Obi Okehi, M.D., P.C. Profit Sharing Plan, Plaintiffs,**

v.

**SECURITY BANK OF BIBB COUNTY, Defendant.**

No. 5:99–CV–397–4(DF).

United States District Court, M.D. Georgia, Macon Division.

Jan. 31, 2001.

---

O. Hale Almand, Jr., Mr., Macon, for Obi Okehi, Sue Beasley, Judy S. Veal, Obi Okehi, M.D., P.C. Profit Sharing Plan, plaintiffs.

John T. McGoldrick, Jr., Mr., Richard A. Epps, Macon, for Security Bank, defendants.

FITZPATRICK, Chief Judge.

Before the Court is Defendant's Motion for Relief from Final Judgment and to Set Aside Default Judgment (tab 9). Defendant claims that it is entitled to relief on two alternate grounds. First, Defendant claims relief under Federal Rule of Civil Procedure 60(b)(4) for a void judgment. Defendant also claims that it is entitled to relief under Rule 60(b)(1) for excusable neglect.

## I. FACTS

This claim was filed in federal court on October 7, 1999. The complaint alleges that Defendant sold shares of stock belonging to a qualified pension plan and that the sale of the stock was an unlawful seizure of the assets of a qualified pension plan and a common law conversion. Plaintiffs filed a return of service on February 23, 2000. The return of service indicates that service was effected on Defendant on October 12, 1999. The return of service, however, indicates that Defendant Security Bank was served but does not indicate the individual who received service on behalf of Defendant. On the same day that Defendant was allegedly served with the summons and complaint for the federal case, Defendant was also served with a complaint in a state case. The two cases have the same subject matter and involve the same parties. The Chief Executive Officer of Defendant received the state complaint, which he forwarded to the bank's attorney. Although he later saw the federal complaint on his secretary's desk, he claims that he understood it to be related to the state case and asked the secretary to file it. The CEO stated that he did not realize that both a federal and a state claim had been filed regarding the alleged incident. Accordingly, Defendant never responded to the federal case and a default judgment was entered against Defendant on May 1, 2000. Defendant filed a Motion for Relief from Final Judgment and to Set Aside Default Judgment on June 14, 2000.

## II. LEGAL ANALYSIS

### a. Void Judgment—Rule 60(b)(4)

The Court will first address Defendant's claim that the judgment is void as a result of insufficient service under Rule 60(b)(4). Insufficient service of process renders a judgment void as the Court lacks personal jurisdiction in such a situation and therefore has no power to render a judgment. *See, e.g., Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1368 (11th Cir.1982) (finding judgment void under Rule 60(b)(4) where Defendant not properly served). Thus, if the Court determines that the service was insufficient, the Court has "no discretion and must grant appropriate

Rule 60 relief." *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir.1986) (quoting *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir.1981)); *see also Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1511 (11th Cir. 1984) (noting that court abused discretion in not addressing personal jurisdiction claim)

The Court held an evidentiary hearing on January 3, 2001 to address the issue of insufficient service. In support of its argument, Defendant called Shirley Jackson, the registered agent of Security Bank, who testified that although she did recall being served with the state court complaint, she did not remember being served with the complaint in the federal case. Jackson further noted that this case was exceptional in that both the state and the federal claim had been filed on the same day and allegedly served on the same day by the same parties alleging the same breaches of the law. Furthermore, Jackson noted that service was typically performed by a law enforcement officer. Given these circumstances, Jackson testified that she believed she would have remembered the service had she been properly served. Additionally, Defendant had previously submitted affidavits from its CEO, Mr. Walker, and its attorney, testifying to the fact that they were not served with the complaint.

Plaintiff then presented evidence in the form of testimony by Stephanie Steele, the administrative assistant who allegedly served the process, and Bond Almand, the attorney who was responsible for ensuring that the process was properly served. Steele testified that although she did not recall serving Jackson, it was her standard practice to serve the person named on the document— here Shirley Jackson, who was named on the return of service. Steele further elaborated that her standard practice involved going to the location where she expected to find the person named on the document, asking for the person so named, and confirming the identity with the named individual. Steele noted that if she was not able to find the named individual she would typically return at a later date. Plaintiff submitted the return of service, which showed that Defendant Security Bank had been served, but did not name the individual served. The summons, however, listed Shirley Jackson as the registered agent of Defendant. Almand further testified that he had instructed Steele to serve Jackson, as she was the individual named on the summons. Almand also testified that he spoke with Steele following the service of the complaint and that, as a result of this conversation, he was satisfied that the service had been proper and made no further efforts to serve Defendant.

■ Courts are split regarding the burden of proof in a Rule 60(b)(4) motion based on insufficient service. Courts in the Eleventh Circuit and former Fifth Circuit addressing this issue have placed the burden on both the plaintiff and the defendant. *Compare Rockwell Int'l Corp. v. KND Corp.*, 83 F.R.D. 556, 559 (N.D.Tex.1979) (placing burden of proof on plaintiff in accordance with burden of proof in a Rule 12 motion to dismiss for lack of personal jurisdiction where movant alleged insufficient contacts to establish personal jurisdiction), *with In re Brackett*, 243 B.R. 910, 914 (Bankr.N.D.Ga.2000) (placing burden of proof on moving party when defaulting party attacks default judgment based on insufficient process). The Seventh Circuit addressed this issue and concluded that the burden of proof to show that judgment is void for inadequate service should lie with the moving party. *See Bally Export Corp.*, 804 F.2d at 404 (citing *Jones v. Jones*, 217 F.2d 239, 242 (7th Cir.1954)). Because the more recent case law indicates that the burden should be placed on the defendant, and because the Northern District of Texas case addressing this issue is distinguishable as the analysis focuses on a situation in which the movant is challenging the sufficiency of its contact with the jurisdiction, this Court chooses to place the burden on Defendant. The Court finds that Defendant's authority for placing the burden of proof on Plaintiffs, *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir.1981), is not controlling as that case did not address a situation in which the party moved to vacate a default judgment under Rule 60(b)(4).

■ The Court finds the issue of the sufficiency of service difficult. All the witnesses

were highly credible, but, unfortunately, none of them could recall the details of the service in this case—they were only able to testify that they did not recall being served or that they believed they would have followed their normal practice when serving process. Despite this difficulty, two pieces of evidence were helpful to the Court in determining that the service was valid. First, Plaintiffs submitted a return of service indicating that service had been effected on October 12, 1999. A return of service constitutes prima facie evidence of valid service. *See O'Brien v. R.J. O'Brien & Associates, Inc.,* 998 F.2d 1394, 1398 (7th Cir.1993); *In re Brackett,* 243 B.R. at 914. Although Defendant is correct in noting that the return of service did not indicate the identity of the person served, the summons lists Shirley Jackson as the registered agent of the corporation.[1] The second item of evidence helpful to the Court in determining the validity of the service was Steele's testimony that although she did not recall serving Jackson, it was her standard practice to serve the individual listed on the document. The Court notes that Federal Rule of Evidence 406 allows "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses . . . to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Fed. R.Evid. 406; *see also Reyes v. Missouri Pac. R. Co.,* 589 F.2d 791, 794 (5th Cir.1979) (discussing Rule 406).[2] In *Reyes,* the former Fifth Circuit discussed the type of behavior that qualifies for admission as habit evidence, noting that "adequacy of sampling and uniformity of response" are "controlling considerations." *Reyes,* 589 F.2d at 794; *see also*

*Loughan v. Firestone Tire & Rubber Co.,* 749 F.2d 1519, 1522 (11th Cir.1985). Habit evidence may "be weighed and considered by the trier of fact in the same manner as any other type of direct or circumstantial evidence." *Loughan,* 749 F.2d at 1523. The court in *Loughan* further noted that habit evidence "allows the trier of facts to infer that the habit was conformed with on a particular occasion." *Id.; see also Meyer v. United States,* 464 F.Supp. 317, 321 (D.Col. 1979) (noting that testimony regarding habit of giving patient warning was sufficient to establish conformity therewith on challenged occasion).

■ Given the return of service and given Steele's testimony regarding her habit of serving process, the Court concludes that service was proper. The above law demonstrates that Steele's testimony regarding her standard practice of serving process qualifies as habit testimony. She testified that she had served process so many times that she could not recall an exact number. Steele further testified as to the steps she took on each of those occasions, steps which included serving the individual named on the process. In addition, Steele specifically remembered the only occasion when she had not served the named individual pursuant to her standard practice, an event that was noteworthy to her as she as she had to confirm receipt of the process. The Court finds that Steele's testimony regarding her method of serving process is sufficient to infer that Steele acted in conformity with her habit by delivering the process to the named individual, Shirley Jackson, on the date in question.

In addition to the above evidence, Defendant acknowledged that they did in fact receive the process. Walker testified in his affidavit that he saw the complaint and summons on the desk of his secretary. Under Georgia law,[3] courts must consider "the fact

---

1. Federal Rule of Civil Procedure 4(h) governs the service of corporations. Rule 4(h)(1) provides that service may be effected "by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by appointment or by the law to receive service of process."

2. The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth

Circuit prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3. Georgia law is applicable in determining whether service was proper through Federal Rule of Civil Procedure 4(e)(1) which is referenced in 4(h) and provides as follows: service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons

of actual notice in answering the question whether an employee is a valid agent for receipt of service." *Henderson v. Cherry, Bekaert & Holland,* 932 F.2d 1410, 1413 (11th Cir.1991). In light of the above factors and evidence, the Court finds that service was proper in this case and accordingly **DENIES** Defendant's motion that the default judgment be vacated pursuant to Rule 60(b)(4) as void for lack of personal jurisdiction.

### b. Excusable Neglect—Rule 60(b)(1)

The Court next addresses Defendant's argument that the default judgment should be set aside under Rule 60(b)(1) for excusable neglect. In this case both a default and a default judgment were entered. As noted by both parties, the excusable neglect standard for setting aside a default judgment under Rule 60(b)(1) is stricter than the good cause standard for setting aside default under Rule 55(c). Because of this, the Court will address the Rule 60(b) argument and if it sets aside the default judgment under Rule 60(b), the entry of default shall also be set aside. *See EEOC v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 527–28 (11th Cir.1990) (noting that excusable neglect standard is more rigorous than good cause standard).

■ Default judgments are generally disfavored because of the policy of deciding cases on their merits. *See Florida Physician's Ins. Co. v. Ehlers,* 8 F.3d 780, 783 (11th Cir.1993). Courts should construe the Rule 60(b) requirements liberally in the context of a default judgment. *See, e.g., Solaroll Shade & Shutter v. Bio–Energy Sys.,* 803 F.2d 1130, 1132 (11th Cir.1986).

Defendant argues that the default judgment should be set aside under Rule 60(b)(1) for excusable neglect. The Supreme Court and the Eleventh Circuit recently clarified the meaning of "excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (holding court abused its discretion in refusing to permit late filing of a proof of claim); *Cheney v. Anchor Glass Container Corp.,* 71 F.3d 848, 850 (11th Cir.

1996) (holding district court's failure to apply *Pioneer* factors in Rule 60(b) "excusable neglect" motion constituted abuse of discretion). In *Cheney,* the Eleventh Circuit noted that it had "been at some pain to define 'excusable neglect' in different factual situations." 71 F.3d at 849 (citing, among others, several excusable neglect cases in the context of Rule 60(b) motions to set aside default judgments). The court then pointed out that the Supreme Court in *Pioneer* had recently clarified the meaning of "excusable neglect," stating that "at least for purposes of Rule 60(b), excusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 850 (internal quotations omitted). The *Cheney* Court proceeded to apply the factors enumerated by the Supreme Court, which are the following: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id. (quoting Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489).

■ Applying these factors, the Court finds that the circumstances weigh in favor of Defendant. First, the Court does not believe that any prejudice would result to the opposing party. In support of this finding, the Court notes that at the time this motion was filed, the same parties were litigating identical issues in a state court. As far as the Court is aware, the state court action is currently pending; hence, there should be no loss to the opposing party in terms of discovery. Plaintiffs argue that they would be prejudiced because the granting of this motion would cause an "additional financial burden" upon them. The Court notes, however, that it is Plaintiffs themselves who chose to pursue identical litigation in both a federal and state action. Hence, Plaintiffs should have been prepared for the financial burden of pursuing such multiple litigation. Moreover, Plaintiffs could have avoided the alleged financial burden by informing Defendant of the ongoing federal litigation, as the

upon the defendant in an action brought in the courts of general jurisdiction of the State."

parties were in contact because of the state action.

For these same reasons, the Court does not find that the length of delay and its impact on the judicial proceedings weighs against granting the Rule 60(b)(1) motion. In addition to the above facts, Defendant responded promptly to the default judgment. The Court entered the default judgment on May 1, 2000; however, Defendant alleges that it did not learn of the default judgment until May 31, 2000, at which time Plaintiffs informed Defendant of the judgment. Approximately two weeks after learning of the default judgment, Defendant filed this motion to set aside. The Court also believes that there is no reason that this delay would adversely impact the district court and thereby impede judicial proceedings. *See Walter v. Blue Cross & Blue Shield United,* 181 F.3d 1198, 1202 (11th Cir.1999) (noting there was "no reason to believe ... untimely response would have had an adverse impact on the district court or its resources").

Lastly, the Court addresses Defendant's reasons for failing to respond to the complaint in this case. Defendant's failure to respond to the complaint in this case is a result of confusion surrounding the same-day filing and service of both this federal complaint and a virtually identical state law complaint. Walker, the CEO of Defendant Security Bank, acknowledges receiving the state law complaint on October 12, 1999. He further stated that he later saw a copy of another complaint on the desk of his secretary. Because he believed it to be identical to the state law complaint, he directed the secretary to file it with the other Obi Okehi materials. The Court believes that Defendant has a responsibility to respond to litigation and to take care that any required action is undertaken. Given the unusual circumstances of this case, however, Defendant's failure to recognize that two separate actions had been filed by identical parties in both state and federal court on the same day is reasonable, especially since the complaints were both served on the same day. Moreover, the circumstances of the error indicate that it was an "omission caused by carelessness .... In other words, [Defendant's] failure to comply ... is attributable to negligence." *Cheney,* 71 F.3d at 850 (internal quotation marks omitted). In addition, the Court finds no indication that Defendant acted in bad faith by choosing to intentionally ignore the federal action. Finally, the Court notes that although Plaintiffs employed the same counsel for both the state and federal court actions, neither Plaintiffs nor counsel ever mentioned the pending federal action to Defendant or to Defendant's attorney.

Plaintiffs argue that Defendant neglected to establish a good reason for the default because of its failure to establish minimal procedural safeguards. Plaintiffs cite *Gibbs v. Air Canada,* 810 F.2d 1529, 1537 (11th Cir.1987) and *Baez v. S.S. Kresge Co.,* 518 F.2d 349, 350 (5th Cir.1975), among others, to illustrate their argument that a default judgment should not be set aside for a failure to establish minimal safeguards. The Court notes that in these cases, the movant was aware of the need for a response to the complaint, but failed to follow up to ascertain that the necessary action had been undertaken. In contrast, Defendant in this case did not realize that a separate federal action had been filed that required action on its part. In addition to this distinction, the Court notes that the Supreme Court's clarification of "excusable neglect" encompasses situations in which the default is attributable to negligence. In fact, *Cheney* specifically refers to situations in which the omission was caused by negligence. *See also Walter,* 181 F.3d at 1202 (noting that "excusable neglect" encompasses situation where secretary failed to "record the applicable deadline—the type of 'innocent oversight' involved in Cheney."); *Advanced Estimating Sys., Inc. v. Riney,* 130 F.3d 996, 999 (11th Cir.1997) (noting that clerical error or miscommunication constitutes "excusable neglect"). The Court believes that the concept of good cause or reason for Defendant's failure to respond encompasses Defendant's failure to recognize that two separate complaints had been filed on the same day. Based on the above analysis, the Court finds that Defendant demonstrated "excusable neglect."

█ In addition to the showing of excusable neglect, the Eleventh Circuit also re-

quires the showing of a meritorious defense for a movant to obtain relief from a default judgment under Rule 60(b).[4] *See Solaroll,* 803 F.2d at 1133 (citing *Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992, 1020 (11th Cir.1982), and *Gulf Coast Fans,* 740 F.2d at 1511, as support for proposition that "[t]o obtain relief under 60(b), a party must demonstrate a defense that probably would have been successful, in addition to showing excusable neglect").[5] The former Fifth Circuit discussed this requirement in *Moldwood Corp. v. Stutts,* 410 F.2d 351 (5th Cir.1969). There, the court noted that it would have been "quickly persuaded to give Stutts relief if ... he had given the District Court even a hint of a suggestion that he had a meritorious defense in either case." *Id.* at 352; *see also Mike Smith,* 896 F.2d at 528 (noting that defaulting party must show meritorious defense that *might* affect outcome of case). The court further elaborated on the meritorious defense requirement by noting that

> there should appear in the motion a clear and specific statement showing, not by conclusion, but by definite recitation of facts, that an injustice has been probably done by the judgment, in that the debt or demand was not owing; that there was a valid defense to it, and that on another trial there will in reasonable probability be a different result.

*Moldwood,* 410 F.2d at 352.

In this case, two different claims have been made against Defendant. The claims arise from a situation in which Security Bank sold stock allegedly belonging to the Obi Okehi, M.D., P.C. Pension Plan. The stock was originally purchased by the Plan as one of its assets; however, Obi Okehi, M.D., P.C. (the "Professional Corporation") pledged the controverted 9000 shares of stock as collateral for indebtedness it incurred with Defendant. Upon default by the Professional Corporation, Defendant foreclosed on the shares of stock and sold them to relieve the Professional Corporation's debt. Plaintiffs claim relief under two statutes. First, Plaintiffs claim that the liquidation of the shares was a violation of 29 U.S.C.A. § 1056(d)(1). In its defense, Defendant asserts that the statute only prohibits the alienation or assignment of pension plan benefits and does not prohibit the seizure of the assets of a qualified plan. In interpreting a statute, the Court should look to the plain language of the statute and give effect to its meaning. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Section 206(d)(1) of ERISA states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1). The phrase "benefits provided under the plan" is key here. The language is not clear, as shown by the multitude of cases interpreting that phrase. *See, e.g., Guidry v. Sheet Metal Workers Int'l Ass'n, Local # 9,* 39 F.3d 1078 (10th Cir.1994) (discussing reach of Section 206(d)(1)). The Court's research has uncovered many cases discussing the definition of "benefits." *See, e.g., Mack Boring & Parts v. Meeker Sharkey Moffitt,* 930 F.2d 267, 273 (3d Cir.1991) (noting that benefits as used in ERISA "refers only to payments due to the plan participants or beneficiaries"); *Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.,* 105 F.3d

---

**4.** Some Eleventh Circuit opinions have viewed the requirement of a meritorious defense as part of the excusable neglect inquiry. *See Ehlers,* 8 F.3d at 784 (setting forth three-factor inquiry for "excusable neglect" motions, one part of which is meritorious defense).

**5.** The Court recognizes the argument that the Eleventh Circuit's adoption of the *Pioneer* analysis in *Cheney* may not be applicable in a setting in which Rule 60(b)(1) is being invoked to set aside a default judgment. The Court's research does not indicate a clear answer to this situation. However, even if this were true, the result in this case would be the same if the Court were to apply the factors enumerated in *Ehlers.* In *Ehl-*

*ers,* the Eleventh Circuit set forth the following three factors that a movant must meet to set aside a default judgment under Rule 60(b)(1): "(1) a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." 8 F.3d at 783. With the additional consideration of the meritorious defense as part of a motion to set aside a default judgment under Rule 60(b)(1) for excusable neglect, the Court will have considered all of these factors. Thus, regardless of the specific test format adopted by the Court, the Court would reach the same conclusion.

210, 215 (5th Cir.1997) (noting that "benefits" as used in § 206(d)(1) refers only to the right to receive payments). In addition to these definitions, the Code of Federal Regulations defines "assignment or alienation of benefits" as follows: "any direct or indirect arrangement whereby a party acquires a right or interest against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 C.F.R. § 1.401(a)–13(c)(1)(ii) (2000). These definitions indicate that section 206(d)(1) only applies to situations where a party is trying to reach the actual or expected benefits of a beneficiary, rather than the plan assets. The Court has been unable to find any case in which section 206(d)(1) has been interpreted to apply to the actual assets of the plan rather than the benefits of a beneficiary. Without deciding the validity of this defense, the Court finds that Defendant has made a showing sufficient to satisfy the meritorious defense standard. In contrast to the movant in *Moldwood*, Defendant has set forth a specific statement demonstrating its belief that it is entitled to relief. The Court notes that Plaintiffs respond to this argument only by restating the facts and previously pleaded ERISA sections, but do not cite any case law to the Court showing Defendant's argument to be flawed. Finally, even if this defense is insufficient, Defendant's defense to Plaintiffs' state law claim, that the pension plan had been terminated at the time of the alleged conversion, would also be applicable to the section 206(d)(1) claim.

In addition to the ERISA claim, Plaintiffs also claim that Defendant violated O.C.G.A. § 18–4–22 by "unlawfully seiz[ing] assets of a qualified pension plan." As its defense, Defendant asserts that prior to the pledge of the stock as collateral, the plan was no longer in existence. In support of this contention, Defendant points to the fact that the stock was pledged as collateral not by the Pension Plan itself, but by the Professional Corporation for a loan to the Professional Corporation, and that Obi Okehi himself signed the certificates. In further support of this defense, Defendant asserts that Obi Okehi himself began to personally endorse the dividend checks at about the time of this transaction.

Based on this information, Defendant believes that the plan had been terminated by the fiduciary, Dr. Okehi, prior to the pledge of the collateral. Under this theory, the conversion of the shares of stock would have been accomplished by Dr. Okehi or the Professional Corporation rather than Defendant. Although the Court does not find this evidence convincing in and of itself, the Court notes that Defendant attempted to seek further information regarding this theory in the state court action and that Plaintiffs resisted revealing this information. The Court does not believe it can fault Defendant for failing to present specific facts when the failure to do so is directly attributable to Plaintiffs' refusal to reveal the requested information. Plaintiffs respond to Defendant's argument by restating their claim under O.C.G.A. § 18–4–22 and by noting that the stock certificates indicated that they were registered in the name of the Pension Plan. The Court does not believe that this evidence negates Defendant's claim that the Plan may have been terminated at the time of the transaction. After carefully considering these arguments, the Court believes that Defendant has presented sufficient evidence in support of its meritorious defense to meet the standard discussed in *Moldwood*, 410 F.2d at 352. The Court further notes that Defendant need only show that it has a meritorious defense that *might* have affected the outcome of the case. *See Mike Smith*, 896 F.2d at 528.

As a result of the above analysis, the Court finds that Defendant has satisfied the requirements to set aside the default judgment under Rule 60(b)(1).

## III. CONCLUSION

In light of the above discussion, the Court hereby **GRANTS** Defendant's motion to set aside the default judgment under Rule 60(b)(1) and to set aside the default under Rule 55(c).