INSITUFORM TECHNOLOGIES, INC., a Delaware Corporation and Insituform (Netherlands) B.V., Inc., a corporation of the Netherlands and Delaware, Plaintiffs,

v.

AMERIK SUPPLIES, INC. (f/k/a B.J.R. Trading U.S.A., Inc.), a Georgia Corporation, and Erik Nielsen, a resident of Georgia, Defendants,

v.

Cosmic–Sondermaschinenbau GmbH, an Austrian entity, Third–Party Defendant.

Civil Action No. 1:08–cv–333–TCB.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 17, 2008.

Jeffrey C. Morgan, Troutman Sanders, Atlanta, GA, Matthew Arthur Braunel, Paul Anthony Maddock, Timothy David Krieger, Thompson Coburn LLP, St. Louis, MO, for Plaintiffs.

Donald Ross Andersen, Tasha Kemi Inegbenebor, Stites & Harbison, Atlanta, GA, for Defendants.

James Woo Ahn, Justin D. Sobodash, Philip J. Graves, Graves Law Office, P.C., Los Angeles, CA, Jared Matthew Lina, Stephen Melvin Dorvee, Arnall Golden & Gregory, Atlanta, GA, for Third–Party Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

### I. Background

On November 2, 2007, Insituform Technologies, Inc. and Insituform (Netherlands) B.V., Inc. (collectively referred to as Insituform) filed a patent infringement suit against AMerik Supplies, Inc. and its president, Erik Nielsen (collectively referred to as AMerik), in the United States District Court for the Eastern District of Virginia.

The case involves a product known as the Cosmic Top Hat, which is manufactured by Cosmic–Sondermaschinenbau, GmbH ("Cosmic"), an Austrian corporation. Cosmic Top Hat is a cured-in-place pipeline system for repairing sewage networks. It uses fiber laminate liners soaked with an epoxy resin that are placed into existing sewage pipes. Upon hardening, the liner creates a "pipe within a pipe," repairing degraded sewage systems without having to dig into the ground to replace old pipelines. AMerik was formerly one of several U.S. companies that sold Cosmic Top Hat.

On December 10, 2007, AMerik filed a third-party complaint against Cosmic alleging that Cosmic, as the maker of the Cosmic Top Hat, is obligated to indemnify AMerik and Nielsen against any liability they may have to Insituform. On January 30, 2008, 2008 WL 276404, the case was transferred to this Court.

On January 29, 2008, AMerik filed a separate action in this Court against Insituform seeking a declaratory judgment that AMerik has not infringed on Insituform's patent rights and that Insituform's patents in Cosmic Top Hat are invalid. This suit also named Cosmic as a defendant, asserting substantially all of the same indemnity-based claims as in the third-party complaint with the addition of a cause of action against Cosmic under Georgia's vouchment statute, O.C.G.A. § 9–10–13.

That same day, AMerik purportedly served Cosmic through its president and CEO, Johann Kübel, with both the summons and third-party complaint in the patent infringement action and the summons and complaint in the declaratory judgment action.[1]

Cosmic failed to file an answer to either the complaint or the third-party complaint within the twenty-day period prescribed by Fed.R.Civ.P. 12(a)(1)(A). On March 3, 2008, AMerik filed motions for entry of default against Cosmic in both actions. That day, the Clerk entered default against Cosmic as a Defendant in the declaratory judgment action, and on March 6, the Clerk entered default against Cosmic as a third-party Defendant in the patent infringement action.

On April 4, the Court entered an order consolidating the two cases.

---

**1.** On February 21, 2008, AMerik filed a return of service in each lawsuit evidencing the service of process upon Cosmic.

Now before the Court is Cosmic's motion for relief from default, or in the alternative, motion to set aside default [67].

## II. Discussion

### A. Legal Standard

If a defendant fails to file an answer within the time required by Fed.R.Civ.P. 12(a)(1)(A), upon motion by the plaintiff, the clerk must enter default against the defendant pursuant to Fed.R.Civ.P. 55(a).

▮▮▮▮ Under Fed.R.Civ.P. 55(c), the Court may set aside an entry of default for "good cause," [2] which is a mutable standard "not susceptible to a precise formula, but some general guidelines are commonly applied." *Compania Interamericana v. Compania Dominicana*, 88 F.3d 948, 951 (11th Cir.1996) (citation and quotation omitted). Some guidelines that courts frequently consider include: (1) whether the default was culpable or willful, (2) whether setting the entry of default aside would prejudice the adversary, (3) whether the defaulting party presents a meritorious defense, (4) whether the public interest has been implicated, (5) whether the entry of default would cause significant financial loss to the defaulting party, and (6) whether the defaulting party acted promptly to correct the default. *Id.* Where service of process is insufficient, the entry of default is void and must be set aside. *See, e.g.,*

*Varnes v. Local 91, Glass Bottle Blowers Ass'n,* 674 F.2d 1365, 1368 (11th Cir.1982).

▮▮▮▮ The defendant bears the burden of establishing good cause to set aside an entry of default. *See Metro. Life Ins. Co. v. Kent,* No. 07–11091, 2008 WL 302372, at *4 (E.D.Mich. Feb. 4, 2008); *In re Durango Ga. Paper Co.,* 314 B.R. 881, 884 (Bankr.S.D.Ga.2004).

▮▮▮▮ The Eleventh Circuit has repeatedly held that there is a strong policy in favor of resolving cases on the merits and that defaults are viewed with disfavor. *See, e.g., In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1295 (11th Cir.2003). For that reason, any doubts regarding whether to set aside an entry of default should be resolved in favor of the party seeking relief. *Davis v. Parkhill–Goodloe Co.,* 302 F.2d 489, 495 (5th Cir.1962).[3] "However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Compania Interamericana,* 88 F.3d at 951–52.

### B. Analysis

Cosmic contends that there are two grounds that constitute good cause for setting aside the entry of default: (1) Cosmic's president, Kübel, was not in fact served with process in either case; and (2)

---

2. In its motion and reply brief, Cosmic erroneously contends that the proper standard for setting aside the entry of default is the "excusable neglect" standard. Under Rule 55(c), the standard for setting aside an entry of default is "good cause." "Excusable neglect" is the standard used by courts to determine whether to set aside a default judgment. *See E.E.O.C. v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir.1990). The "excusable neglect" standard comes directly from Fed.R.Civ.P. 60(b) and is more rigorous than the "good cause" standard. *Id.* However, because Cosmic is correct in asserting that

the standard used to set aside an entry of default is less stringent than the standard used to set aside a default judgment, Cosmic's erroneous contention regarding the applicable standard does not affect the Court's decision.

3. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all decisions of the former United States Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

even if Cosmic was served, other good cause exists: any default was not culpable or willful, AMerik would not be prejudiced by setting aside the entry of default, Cosmic can present a meritorious defense to AMerik's claims, and Cosmic responded promptly to the entry of default.

### 1. Whether Cosmic Was in Fact Served

■ Under Fed. R. of Civ. P. 4(h), service of process on a corporation may be effected by delivering a copy of the summons and the complaint to an officer of the corporation. As a general rule, a signed return of service constitutes prima facie evidence of valid service. *DIRECTV, Inc. v. Carlson,* No. 1:03CV831–T, 2004 WL 1809917, at *2 (M.D.Ala. Aug. 4, 2004); *Okehi v. Sec. Bank of Bibb County,* 199 F.R.D. 388, 391 (M.D.Ga.2001). This presumption can be overcome only by strong and convincing evidence. *DIRECTV,* 2004 WL 1809917 at *2.

On February 21, 2008, AMerik filed returns of service indicating that Kübel was served at 5:00 p.m. on January 29, 2008 while attending the Underground Construction Technology Conference and Exhibition at the Cobb Galleria Mall and Convention Center. Thus, a presumption exists that Cosmic was in fact served (by delivery of the summonses and pleadings to Kübel).

On April 18, 2008, Cosmic filed its motion for relief from default, or in the alternative, to set aside entry of default. In support of its motion, Cosmic filed three sworn statements: a declaration by Johann Kübel; an affidavit from Chris Scarratt, who is chief operating officer of Cosmic Top Hat LLC, an American subsidiary of Cosmic Sondermaschinenbau GmbH; and a declaration from Kerstin Zinner, who is Kübel's daughter.

In his declaration, Kübel testifies as follows:

I understand that [AMerik] contend[s] that I was served at a trade show in Atlanta on January 29, 2008. I did attend a trade show in Atlanta on such date, at which I was very busy interacting with a large number of people. I was never handed any papers by anyone that I recognized as a process server, or that I was aware were of a legal nature, on that date.

He further asserts that at around 5:00 p.m., the trade show was closing and that he and others staffing Cosmic's booth were locking up display items in a truck near the booth and that other people unrelated to his company were near the booth. He offers that "[g]iven this general atmosphere, it is possible that a process server approached someone at the booth and thought it was me."

Kübel's declaration also indicates that prior to engaging U.S. counsel, it was his belief that in order for documents to be served in a legal proceeding, the documents had to be signed for when delivered. Thus, he asserts, "even if someone had handed me some legal papers from AMerik during the trade show, I would not have understood that they were legal papers that must be responded to."

Kübel concludes his declaration by asserting that he had been notified by several clients that Insituform communicated to them that Cosmic's Top Hat products infringed on Insituform patents. Because of concerns with customer perception, he began searching for legal counsel to investigate the strength of Insituform's claims. He testifies that he "did not become aware that any legal claims had been made in a court proceeding by AMerik against Cosmic, or that a default had been entered against Cosmic in any proceeding, *until some time later*" but does not indicate exactly when that later time was. He further testifies that upon realizing that

AMerik had asserted legal claims against him, he engaged his current counsel on April 2, 2008. Finally, Kübel asserts that English is not his first language and that while he speaks English, he does not consider himself to be fluent in it.

The testimony from Scarratt's affidavit and Zinner's declaration, attached as exhibits to Cosmic's motion for relief, are nearly identical. Both assert that Scarratt and Zinner were with Kübel for most of the day and that they never saw anyone serve Kübel. They also assert that they never heard anyone state that Kübel was being served and that they never saw anyone hand Kübel "what appeared to be legal papers." Further, they rearticulate Kübel's original account of the activities on January 29, 2008 around 5:00 p.m., stating that at that time those staffing Cosmic's booth were locking up display items and packing them into a nearby truck. Finally, both Scarratt and Zinner state that they have close relationships with Kübel and that they would have expected Kübel to mention if he had been served that day, which he did not do.

On June 9, 2008, AMerik filed its response to Cosmic's motion. The response included the declaration of Defendant Erik Nielsen, president and CEO of AMerik, and the declaration of Eric West, the process server retained by AMerik to serve Cosmic.

According to West's declaration, West examined a picture of Kübel prior to attempting to serve him. While at the convention center, West met with Defendant Nielsen, who directed West to the booth where Kübel was working on behalf of Cosmic. West observed Kübel for approximately ten minutes. West testifies that during this time he noticed that although Kübel spoke with a "distinguishable European accent," Kübel had no difficulty communicating in English with customers at Cosmic's booth. Further, West asserted

that while he was waiting to serve Kübel he did not see anything indicating that the booth was being dismantled or closed down for the day.

After observing Kübel for ten minutes, at approximately 5:00 p.m. West approached Kübel, and as was his customary practice, he handed the suit papers to Kübel and stated, "Johann Kübel, this is for you." Kübel responded, "Thank you." The person to whom West handed the papers did not deny that he was Johann Kübel. In his declaration, West testifies that he is "completely certain" that the person he served was Kübel.

On June 19, 2008, Cosmic filed its reply brief in support of its motion for relief from default. Cosmic filed with its reply brief a second declaration from Kübel and a second affidavit from Scarratt.

In his second declaration, Kübel provides more unequivocal and strongly-worded testimony than he provided in his first declaration. For instance, for the first time, Kübel definitively asserts that he was not served at the convention center. He also attempts to explain his deposition testimony, in which he swore that he was "[n]inety percent sure" that service did not occur, by stating that his lack of certainty was a result of his unfamiliarity with how service is perfected in the United States.

In his second declaration, Kübel further alleges, for the first time, that "shortly before leaving for my meeting with Insituform on March 25, 2008, I received a fax of a letter dated January 29, 2008 stating that I had been hand delivered a Complaint." According to Kübel, upon receiving the facsimile he contacted his Austrian attorney who urged him to retain U.S. counsel as soon as possible. Finally, Kübel's second declaration further specifies his recollection of the timing of the events of January 29, 2008, stating that from 5:00

to 5:20 p.m. he was loading items into Cosmic's truck and talking with customers.

■ In Scarratt's second affidavit, Scarratt addresses Defendant Nielsen's declaration testimony that prior to the trade show he informed Scarratt that Kübel would be served on January 29, 2008. Scarratt states that he never informed Kübel of this because he "did not want to get involved" in the dispute between Kübel and Nielsen. Further, Scarratt denies Nielsen's declaration testimony that Scarratt stated that he had observed Kübel and Zinner reviewing the complaint.[4]

4. On July 1, 2008, AMerik filed a motion to strike Kübel's second declaration and Scarratt's second affidavit [102] on the grounds that they are untimely. AMerik also contends that Kübel's second declaration should be stricken because it was signed by his lawyer rather than himself, and because it contradicts his prior declaration and deposition testimony.

With respect to the timeliness of Kübel's second declaration and Scarratt's second affidavit, AMerik's objection is well-founded. LR 7.1, NDGa provides that any allegations of fact relied on to support a motion should be attached to the memorandum of law filed with the original motion, not with the reply. "Submitting supplemental affidavits or declarations on reply is generally improper, since it denies the opposing party an opportunity to address these materials in response." *Griffin Indus., Inc. v. Couch,* No. 1:05–cv–0684–WSD, 2006 WL 783354, at *2 n. 1, 2006 U.S. Dist. LEXIS 17285, at *7 n. 1 (N.D.Ga. Mar. 23, 2006), *rev'd on other grounds sub nom. Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1210 (11th Cir.2007). Cosmic contends that the supplemental testimony is permissible because it responds to new and unanticipated matters raised in AMerik's response to Cosmic's motion. The Court is inclined to agree with AMerik. The Court believes that the testimony primarily focuses on the issue of whether Cosmic was in fact served—the central issue in Cosmic's motion. Any arguments raised by AMerik on this point could have been anticipated by Cosmic. The Court agrees with AMerik that the testimony was submitted for the purpose of bolstering and/or modifying insufficient testimony filed with the original motion.

AMerik's second ground for striking Kübel's second declaration also has merit. AMerik contends that Kübel's second declaration does not comply with 28 U.S.C. § 1746 because it was not signed by Kübel, but was signed by his attorney, Justin Sobodash. 28 U.S.C. § 1746 permits an unsworn declaration in the place of sworn testimony so long as the declaration contains some language attesting, un-

der penalty of perjury, that the statements contained in the declaration are true and correct. The statute does not contemplate that the witness's attorney will execute the declaration on the witness's behalf. However, in its response to AMerik's motion to strike, Cosmic has resubmitted a declaration signed by Kübel that is identical to the declaration that his lawyer had signed on his behalf. Because Cosmic has corrected this technical defect, the Court will not strike Kübel's second declaration on this basis.

Finally, the Court concurs with AMerik's contention that Kübel's second declaration contradicts his previous declaration and deposition testimony. In support of this proposition, AMerik references the Eleventh Circuit's decision in *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984), in which the court held that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." While the Court agrees with AMerik that portions of Kübel's second declaration are inconsistent with his previous testimony, Cosmic is correct in asserting that the Court in *Van T. Junkins* did not consider a motion to strike an affidavit, but rather whether to consider that affidavit in a summary judgment motion. The Court believes that it is appropriate to view the inconsistencies in the declarations as affecting the weight rather than the admissibility of the latter declaration. *See Virgin Enters. Ltd. v. Am. Longevity,* No. 99 CIV. 9854(CSH), 2001 WL 789299 at *2 n. 2 (S.D.N.Y. July 11, 2001). Thus, the Court will not strike Kübel's second declaration despite its shortcomings.

Ultimately, the Court believes that the untimely nature of Kübel and Scarratt's testimony in conjunction with the inconsistencies in Kübel's original declaration undermine the trustworthiness of the two witnesses' testimony. However, the Court believes that in the interests of justice, the appropriate remedy is

■ Thus, the Court is faced with a credibility determination regarding what actually happened at the trade show on January 29, 2008. As stated above, in order to overcome the prima facie evidence of service provided by the signed return of service, Cosmic bears the burden of demonstrating strong and convincing evidence that service did not occur. *DIRECTV*, 2004 WL 1809917 at *2. The Court finds that Cosmic's evidence does not come close to meeting this standard.

As an initial matter, the Court finds that West's testimony is the most credible. West is a professional and highly experienced process server with no interest in either lawsuit. His declaration provides details sufficient to convince the Court that he knew who Johann Kübel was and in fact handed the suit papers to him. Further, West testified that when hand delivering the papers he said, "Johann Kübel, this is for you." The person to whom West delivered the papers did not deny that he was Kübel, but instead responded, "Thank you." The Court believes that this testimony indicates that Cosmic was in fact served.

Conversely, the Court finds that there are significant reasons to question the veracity of the testimony offered by both Scarratt and Zinner. Scarratt has an interest in both of the consolidated cases as he is the chief operating officer of Cosmic's U.S. subsidiary and could face recrimination were he to offer testimony inconsistent with Kübel's denials that he was served with the suit papers. Similarly, Zinner, as Kübel's daughter, is presumably aligned with Kübel for both familial and pecuniary reasons. Moreover, both Zinner's declaration and Scarratt's original affidavit stated that they were with Kübel "most of the day," but did not state whether they observed all of Kübel's activ-

ities around 5:00 p.m., when West handed the papers to Kübel. Both Zinner's and Scarratt's testimony hypothesized that someone else could have been served at that time, but did not affirmatively assert that Kübel was not served at that time. Because both Zinner and Scarratt are interested witnesses and because their testimony does not unambiguously deny that Kübel was served, the Court views their testimony as less probative than West's.

Scarratt's second affidavit is similarly unconvincing in its description of his activities around 5:00 p.m. Scarratt revised his earlier testimony by stating, "I specifically recall that from approximately 5:00 p.m. to approximately 5:20 p.m. on January 29, 2008 Mr. Kübel was assisting me, Ms. Zinner, and Chris Armijo load items into the Cosmic truck." The amount of specificity in Scarratt's second affidavit is curious considering that his initial affidavit did not include such precise starting and ending times or address whether he was with Kübel at 5:00 p.m. Further, West testified that he served Kübel at "approximately" 5:00 p.m., whereas Scarratt testified that Kübel was helping him load items into Cosmic's truck starting at "approximately" 5:00 p.m. Given that both West's and Scarratt's testimony is imprecise regarding the timing of the events of late that afternoon, their testimony is not irreconcilable. All of the foregoing facts lead the Court to conclude that Scarratt's testimony fails to rebut West's testimony.

Similarly, the Court finds that Kübel's testimony is so inconsistent and artfully crafted that it lacks credibility and fails to rebut West's declaration.

■ As AMerik points out, in his initial declaration Kübel did not explicitly deny being served. Instead, he asserted that he

not to strike the testimony, but to consider it in light of the witnesses' lack of credibility.

For that reason, the Court will deny AMerik's motion to strike.

was never handed papers by someone he "recognized as a process server" and that he was not handed any documents that he was "aware were of a legal nature." The Court takes judicial notice of the fact that process servers do not ordinarily wear clothing or carry on their person indicia revealing the nature of their work. Thus, Kübel's statement that he was not handed papers by someone he "recognized as a process server" is meaningless, as is the fact that Kübel did not recall being handed documents that appeared to him to be "of a legal nature." Nothing in the Federal Rules of Civil Procedure requires that the process server identify the nature of the documents being served.

Further, in his deposition in this case Kübel admitted that it is possible that he was served, which conveniently comports with the narrow assertions made in his initial declaration. Kübel offered in that declaration that "if someone had handed me some legal papers from AMerik during the trade show, I would not have understood that they were legal papers that must be responded to." The Court questions the truth of such a statement. Kübel is a sophisticated businessman, operating a company with significant ties and presumably numerous contracts with U.S. businesses. The Court finds it improbable that upon being handed suit papers Kübel would not recognize that the documents had legal significance requiring action on his part. This is especially true considering that at the time that Cosmic alleges Kübel became aware of the consolidated lawsuits in March 2008, Kübel promptly retained an attorney. Thus, the Court concludes that Kübel's initial declaration fails to provide evidence sufficient to rebut West's declaration.

The Court also finds that the testimony in Kübel's second declaration further supports the conclusion that Kübel's testimony lacks credibility. It is in his second declaration that Kübel unequivocally asserts—for the first time—that he was not served. Kübel had the opportunity in both his original declaration and in his deposition testimony to make such an assertion. However, in both instances he did not do so.

Kübel also stated in his second declaration that he only became aware of the consolidated lawsuits upon receiving a fax in March 2008 of a copy of a letter that was supposedly attached to the process served on January 29, 2008. Prior to this declaration, in his May 29, 2008 deposition, Kübel testified that he was not sure how he became aware of the lawsuit, but that at some time in March 2008 he realized he needed to contact an attorney. Even after repeated questioning from AMerik's counsel, Kübel could not state with particularity when or how he became aware of the lawsuit. Thus, Kübel's sudden recollection of the faxed letter in his second declaration is difficult to accept. Moreover, Cosmic has yet to produce a copy of this fax. The fact is that that the substance and details of the events of January 29 have changed every time Kübel has taken an oath to tell the truth. This compels the Court to view all of his testimony with a cynical eye.

Because West's return of service and declaration are prima facie evidence that service was in fact perfected and Cosmic's evidence fails to rebut that evidence, the Court resolves the factual dispute in AMerik's favor and concludes that Cosmic was in fact served with process in both cases.

### 2. Whether Other "Good Cause" Exists

Cosmic also contends that even if service took place, Cosmic has presented other evidence that satisfies the "good cause" standard.

Cosmic first asserts that any default was not culpable or willful because as soon as Kübel allegedly became aware of the com-

plaint and third-party complaint, he engaged U.S. counsel to represent Cosmic. Cosmic further asserts that AMerik would suffer no prejudice by setting aside the entry of default because the two-month delay in the filing of responsive pleadings would not result in any loss of evidence, increased difficulties with discovery, or greater opportunities for fraud or collusion. Cosmic also alleges that it has several meritorious defenses to AMerik's indemnity claims. Finally, Cosmic reasserts that it moved promptly to correct the default, filing its motion for relief from default just over one month after the Clerk entered the default.

In response, AMerik focuses almost exclusively on the issue of whether Cosmic's default was willful or culpable. AMerik points to several events between November 2007 and March 2008 that demonstrate that Kübel was aware of the lawsuits and that he was aware that Cosmic was a party to the lawsuits. AMerik asserts that this evidence demonstrates that Cosmic had knowledge of the lawsuit and ample time within which to respond, but failed to do so.

AMerik also challenges Cosmic's assertion that it moved promptly to correct the default by pointing to the fact that Kübel could not state with particularity when or how he became aware of the lawsuit. For that reason, AMerik argues, Cosmic has failed to provide any verifiable evidence concerning the promptness of its response to the lawsuits.

Upon careful consideration of the arguments of both sides, the Court finds that even though default is disfavored, Cosmic has failed to demonstrate that "good cause" exists for its failure to timely respond to the lawsuits. The record shows that Kübel was provided with notice of Cosmic's status as a third-party Defendant in the patent infringement action and as a Defendant in the declaratory judgment ac-

tion on several different occasions before Kübel was even served. Thereafter, following formal service of the suit papers upon Kübel, Cosmic *still* ignored both actions, demonstrating an intentional and reckless disregard for the judicial proceedings.

On November 21, 2007, counsel for AMerik sent Kübel and Scarratt letters informing them of Insituform's patent infringement lawsuit. The letter also formally tendered AMerik's defense of that lawsuit and indicated that AMerik intended to seek indemnity from Cosmic. The letter was sent via overnight mail and via e-mail to both Kübel and Scarratt. Scarratt acknowledged in his deposition that he understood that the letter indicated that AMerik was seeking indemnity from Cosmic and that a timely response was required. Scarratt further testified that he discussed the patent infringement lawsuit with Kübel at some point during December 2007 and that Kübel told him not to worry about it.

Further, as early as December 11, 2007, the day after AMerik filed its third-party complaint, Kübel was placed on notice that Cosmic was a party to a lawsuit. That day, counsel for AMerik sent a copy of the third-party complaint and a waiver of service form to Cosmic's U.S. counsel, Dennis Fredericks. A copy of this letter was also sent directly to Kübel at his Austrian business address. Kübel testified in his deposition that Fredericks also forwarded a copy of the letter to him. In his deposition, Kübel asserted that he did not understand the significance of the letter and that when he received it he was not concerned about it and did not "have time to think over that." Even if one were to concede that a language or cultural barrier may have made it more difficult for Kübel to understand the significance of the letter, that would not excuse Kübel's decision to

not discuss with his counsel the legal significance of this correspondence and ensure that appropriate action be taken in response thereto. The Court finds that this letter put Kübel on notice that Cosmic was a party to the patent infringement lawsuit.

Additionally, in a February 4, 2008 letter to Kübel, counsel for Insituform informed Kübel that it was asserting that Cosmic's products violated Insituform's patents and offered Kübel a license for its products. The letter also provided information about the lawsuit originally filed in the Eastern District of Virginia and informed Kübel that "AMerik filed a third-party complaint against Cosmic requesting that a judgment be entered declaring that Cosmic must indemnify and hold harmless AMerik from any claims arising from [the original Insituform] suit." In his response to this letter, Kübel acknowledged the offer and requested more time to "look over our economical situation before we can take your offer in consideration." Nothing in Kübel's response indicates that he did not understand the contents of the letter, including Insituform's statement that Cosmic was a third-party defendant in the lawsuit.

Instead of taking any action to protect Cosmic's interests in the lawsuits, Kübel apparently decided that the best course was to ignore the lawsuits and attempt to negotiate a deal with Insituform. On March 25, 2008, after extended correspondence between Insituform and Cosmic, Kübel traveled to St. Louis, Missouri, to negotiate a licensing agreement with Insituform. He did so without contacting AMerik and without being represented by counsel. The negotiations failed, and two days later, on March 27, Kübel met with Cosmic's current counsel and formally retained counsel's services on April 2.

When considering all of the foregoing facts, the Court simply cannot believe that Kübel was unaware of his obligation to inquire into the nature and status of the legal proceedings against Cosmic. He was repeatedly put on notice and had ample opportunity to investigate and respond to the claims asserted against Cosmic in both lawsuits. While Cosmic is correct in arguing that notice of a lawsuit without proper service cannot trigger a party's obligation to respond, the foregoing evidence demonstrates that Kübel was informed by both AMerik and Insituform that Cosmic was a party to a lawsuit. At that point, any reasonable businessperson would have investigated the lawsuit. Further, this Court found above that Cosmic was served on January 29, 2008, and from that date forward Cosmic had an undeniable duty to respond, yet chose not to do so.

Even if the Court were inclined to grant Kübel some leeway due to the fact that he is an Austrian national and may not have full familiarity with the American judicial system, his failure to respond in a timely manner cannot be justified. The record indicates that he knew that Cosmic was a party to a lawsuit and that he made a conscious decision to do nothing in response to AMerik's complaint. The Court believes that when taken in their totality, Kübel's actions demonstrate "an intentional or reckless disregard for the judicial proceedings," and thus "the court need make no other findings in denying relief." *Compania Interamericana,* 88 F.3d at 951–52.

The Court recognizes that default is a drastic remedy and that it is generally disfavored. However, in order for the judicial system to properly function, there are basic rules that have been established that must be followed. Cosmic, through Kübel, was aware of the lawsuit, was properly served by AMerik, and therefore had an obligation to file a timely response with this Court. Cosmic failed to do so and has

not presented sufficient evidence to support a conclusion that Cosmic had good cause for not responding in a timely fashion. For that reason, the Court will not grant relief from default or set aside the entry of default.

## III. Conclusion

For the foregoing reasons, the Court DENIES Cosmic's motion for relief from default, or in the alternative, to set aside entry of default [67] and DENIES AMerik's motion to strike the declaration of Johann Kübel and the affidavit of Chris Scarratt [102].